Argued and submitted February 27, modified on appeal and cross-appeal; affirmed as modified June 14, 1989

In the Matter of the Marriage of

HOLT,
*Respondent - Cross-Appellant,*
*and*

HOLT,
*Appellant - Cross-Respondent.*
(87 C 30995; CA A46621)

776 P2d 7

Eric Yandell, Salem, argued the cause for appellant - cross-respondent. With him on the briefs was Heltzel, Upjohn, Shaw, Williams and Yandell, Salem.

Gary M. Bullock, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Craig M. Cowley, Portland.

Before Graber, Presiding Judge, and Joseph, Chief Judge, and Edmonds, Judge.

GRABER, P. J.

## GRABER, P. J.

Husband[1] appeals and wife cross-appeals from an amended dissolution judgment.[2] The issues are property division, spousal support, and attorney fees. On *de novo* review, we modify the judgment and affirm it as modified.

Husband, then 34, and wife, then 26, began dating in 1976, and on July 1, 1978, began cohabiting in a house that husband owned in Lebanon. Wife's sons from a previous marriage lived with them. In November, 1979, the parties bought and moved into a house in Salem. They made a $16,500 down payment, of which wife contributed $4,000 and husband, $12,500. Husband testified that only his name was on the deed to the house, but both their names were on the note and the mortgage securing it.

Throughout that period, they kept their financial affairs separate, except that each contributed $650 per month to a joint checking account. They used funds from that account to pay for the mortgage, food, home maintenance, and similar items. Thus, each contributed equally to house payments and household expenses. In August, 1982, wife and her sons moved out. Husband and wife closed their joint accounts.[3] They sold a truck and split the proceeds equally. They also entered into an oral agreement under which husband paid wife $10,000 by a check on which he wrote, "complete liquidation of assets." He testified about the purpose of the payment:

> "Q [BY HUSBAND'S ATTORNEY]:   [Husband], we've

---

[1] We refer to the parties as husband and wife throughout this opinion, even when we discuss periods during which they were not married.

[2] The original judgment was entered on October 26, 1987. On November 24, 1987, husband timely filed a notice of appeal. On December 2, 1987, the trial court, pursuant to wife's motion, entered an order setting aside the judgment. ORCP 71C. The purpose of the order was to permit entry of a new judgment correcting an alleged error in the first one. Because the notice of appeal had been filed, the trial court had no authority to enter the order. ORS 19.033(1). We dismissed the appeal to allow the trial court to make the change, the trial court entered an amended judgment, and we allowed the parties to reinstate the appeal. ORS 19.033(3).

[3] In addition to the joint checking account, the parties had a joint savings account, from which they paid for property taxes, car insurance and, on occasion, vacations. They closed that account when they separated in August, 1982, and apparently never reopened it.

heard testimony today that the parties split apart from this nonmarital relationship in 1982. Is that correct?

"A [HUSBAND]: Yes.

"Q: At that time did you pay [wife] a total of over $12,000?[4]

"A: Yes.

"Q: What was the purpose of that payoff?

"A: To liquidate—if I may give you a lengthy explanation. We bought certain things, paid for drapes, landscaping, her down payment—

"* * * * *

"[HUSBAND]: Basically what I did is gave [sic] her the money for the assets or her contribution to our relationship. I liquidated her out. I paid her off. * * * "

Wife also testified about the payment:

"THE COURT: [At the time of the 1982 separation,] [w]as there a sum of money paid over to you?

"[WIFE]: Yes.

"THE COURT: Ten or $12,000?

"[WIFE]: Yes.

"* * * * *

"THE COURT: What was the purpose of the money? Why was [it] paid to you?

"[WIFE]: It was for interest in the home that we had accumulated. This included furniture, drapes, anything that we accumulated during—during this time.

"THE COURT: Was there a question at that time whether or not you would get back together?

[WIFE]: No, sir. Excuse me, sir. There probably was a question of us getting back together, but we—we saw each other and that was all.

"THE COURT: Okay. Then, was the purpose of the $12,000 to have resolved your differences in the event you did not get back together?

"[WIFE]: Yes, sir."

---

[4] Husband includes wife's share of the proceeds from selling the truck in calculating that his payment to her was over $12,000.

In December, 1982, four months after they separated, the parties moved back together. In March, 1983, they married. In March, 1987, they separated again, and shortly thereafter wife filed this dissolution action. Except during the four-month separation in 1982, when husband paid the mortgage, husband and wife contributed equally to the mortgage payments and household expenses. Throughout their cohabitation and marriage, both worked. At the time of trial, wife's net pay was approximately $1,000 per month; husband's was approximately $2,000.

The trial court found that, in making the August, 1982, agreement, the parties intended to resolve all claims of property interests except for their interests in the house. Consequently, the court divided all the property, except the house, as if the relationship had begun in December, 1982, after the four-month separation. On the other hand, the court treated the house as a marital asset that had been acquired in 1979 and awarded wife one-half of the total equity in it.

In his first and second assignments of error, husband argues that the August, 1982, agreement resolved all property interests, including the house. Therefore, he contends, although the house was a marital asset, wife should receive only one-half of the increase in equity from December, 1982, to March, 1987. Wife takes the position that the agreement excluded the house, as the trial court found.[5]

**1.** Husband testified that the $10,000 payment was intended to settle all of the parties' property interests. Wife's testimony confirmed that intent. She also testified that her sons landscaped the real property, increasing its value by $5,000, and that half of the payment was for that work. Even accepting that statement, the record does not show that her share of what she says was included in the agreement (such as drapes and household furnishings) represents $5,000 in value. In other words, if wife's interest in the house is *not* included in

---

[5] Alternatively, wife argues that the August, 1982, agreement was conditioned on the parties' not getting back together or that their reconciliation modified the agreement. The only evidence to support that interpretation is the exchange between wife and the trial court that we quoted above. That testimony does not persuade us that the agreement was conditional or that the reconciliation modified it.

accounting for the $10,000 payment, that payment makes little sense.[6] No evidence suggests that the agreement was meant to cover some property interests but not others. We find that the $10,000 payment was intended to pay for all of wife's property interests, including her equity in the house.

Accordingly, the 1982 agreement terminated the parties' mutual property interests as of August, 1982. Thereafter, they were together, married and unmarried, for 52 months from December, 1982, to March, 1987. *See Caverly and Caverly,* 65 Or App 98, 100, 670 P2d 199, *rev den* 296 Or 236 (1983). Our goal is, as far as possible, to put the parties back where they were in December, 1982. *York and York,* 30 Or App 937, 939, 569 P2d 32 (1977); *see* ORS 107.105(1)(f). In addition, each is entitled to share in property that was acquired or that increased in value during the 52 months.

Wife is entitled, therefore, to one-half of the increase in equity in the house during the 52 months. Husband's brief states that the principal on the mortgage decreased $1,741 during that period.[7] Wife is entitled to one-half of that increase in equity, or $870. There also was evidence that the value of the house increased $2,000 from November, 1979, when the parties bought it, to the time of trial, but the record contains no evidence of when that appreciation occurred. Accordingly, the record does not show, and we cannot find, that any of the increase occurred after December, 1982. Thus, we award wife none of the $2,000 appreciation.

2.       Husband next argues that the trial court erred in declaring a "Shearson Stock Account" to be a marital asset. That account was created during the first period when the parties cohabited. Husband originally funded it from proceeds of the sale of two houses that he owned before the parties began cohabiting in 1978. As discussed above, the parties intended to divide their property interests by their settlement in August, 1982. However, husband brought the account into

---

[6] Wife argues that the fact that she remained liable on the note and mortgage shows that she was to retain an interest in the house after the separation. That obligation is not enough to persuade us that the agreement excluded her interest in the house, particularly in the light of husband's payment of the mortgage during the separation.

[7] That figure is not in the record. However, it is consistent with figures that are in the record, and wife does not contest it.

the marriage in December, 1982. In 1985, while the parties were married, he received $5,000 in severance pay from a former employer and deposited it into the Shearson Stock Account. During the marriage, money from the account was used to fund wife's IRA and to pay household expenses. Husband has not overcome the presumption that the account was a marital asset, ORS 107.105(1)(f), and we treat it as such.

**3.**     The parties also dispute the value of the Shearson Stock Account. At trial, they stipulated that it was worth $7,026. After the trial court awarded the account to her, wife learned that its value had dropped to $3,322 by the time of the judgment. Until the effective date of the judgment, the account was in husband's name and subject to his control. On wife's motion, the trial court set aside the original judgment and entered an amended judgment to increase wife's equalizing judgment to reflect the account's depletion. *See* n 2, *supra.* The parties stipulated that husband had used $2,900 from the account to pay temporary spousal support to wife and that the decrease resulted from the $2,900 withdrawal plus market losses and sales commissions. The trial court ordered husband to make up the entire difference between $7,026 and $3,322. That was error, because husband was not responsible for the market fluctuation and, as to that element, the parties were bound by their stipulation of value. We hold husband responsible for the $2,900 that he withdrew to pay spousal support and for the $360 in sales commissions.[8] We therefore value the Shearson Stock Account, as wife received it, at $3,766.

**4.**     In her first assignment of error on cross-appeal, wife contends that she is entitled to one-half of the full value of various accounts in her and husband's names. We agree as to all but two of them, husband's Champion IRA and his "Champion International Ownership Account." The trial court found, and neither party disputes, that interest of $1,957 accumulated in the IRA during the marriage and that the interest is a marital asset subject to equitable division. However, husband purchased the IRA in January, 1982, and neither added

---

[8] The parties also stipulated that the decrease resulted from $2,900 in spousal support, $360 in sales commissions, and $795 in market "fluctuations," which we take to mean a loss. In other words, they stipulated that a decrease of $3,703 was caused by $4,055 in losses. For lack of a better record, we accept the stipulation that husband withdrew $2,900 from the account to pay temporary spousal support, and we draw the inference that the $360 in sales commissions related to that transaction.

to nor withdrew from it during the marriage. We find that he has overcome the presumption that the $2,000 principal in the IRA is a marital asset.

**5.**      The trial court disposed of the Champion International Ownership Account this way:

> "The Champion International [Ownership] Account * * * has a total [after tax] value of $19,950.00. [The parties agree on that value.] The account commenced when respondent went to work with Champion in February, 1976. Contributions continued through July, 1985, when respondent's employment with Champion ended. The account accrued interest through the time of trial. The Court does not consider the total $19,950.00 value to be part of the marital estate. During the trial, no evidence was presented of the actual value of the plan at various points in time. For lack of a more objective procedure, the Court finds that the plan was in effect for eight years and five months and that, in that period, it had growth in the sum of $197.50 [per month]. [101 months x $197.50 per month equals roughly $19,950.] The marital relationship lasted fifty-two months. By multiplying fifty-two times $197.50, the marital value of the account of $10,271.00."

Wife argues that the entire account is a marital asset, because the calculation should be "based upon the entire span of the parties' domestic relationship, 105 months," and because the account "became vested" in July, 1985, during the marriage. The trial court did not err in the ways that wife suggests. First, any interest that she had in the account before the marriage was released by the August, 1982, settlement payment from husband. Moreover, the trial court properly divided only the part of the account that accrued during the marriage. *See Richardson and Richardson,* 307 Or 370, 378-79, 769 P2d 179 (1989).

We find this distribution of the assets to be equitable:

|  | Wife | Husband |
|---|---|---|
| Increase in Champion Ownership Account During Marriage |  | $10,271 |
| Increase in Equity in House During Marriage |  | 1,741 |

| | | |
|---|---:|---:|
| Piper-Jaffray Account[9] | | 2,676 |
| Diamond Pendant | 1,200 | |
| Increase in Champion IRA During Marriage | | 1,957 |
| Simpson 401k Plan | | 2,660 |
| Wife's Shearson IRA | 2,242 | |
| Husband's Shearson IRA | | 3,116 |
| 1984 Nissan | 2,500 | |
| 1980 Mustang | | 600 |
| Linn Credit Union Account | 525 | |
| Shearson Stock Account | 3,766 | |
| **TOTAL** | **$10,233** | **$23,021** |
| Judgment to equalize division[10] | 6,394 | (6,394) |
| | $16,627 | $16,627 |

**6.**     In her second assignment of error, wife seeks $200 per month in spousal support for two years. Husband argues that wife is entitled to no support, because she worked throughout their relationship and is currently employed. He asserts that, "[i]n short term marriages, where the requesting spouse is readily employable, spousal support is inappropriate."

The length of a marriage, although it is to be considered, is not dispositive of whether spousal support is appropriate.[11] ORS 107.105(1)(f); *see Kilpatrick and Kilpatrick,* 38 Or App 159, 163, 589 P2d 1153 (1979). This marriage was relatively short, but the evidence shows that wife's employment

---

[9] Neither party raises arguments on appeal with respect to the Piper-Jaffrey account, the Linn Credit Union account, and the automobiles, or the diamond pendant, and both treat those items as marital property subject to equitable division.

[10] Wife spent some of the $10,000 that she received in 1982 on tangible personal property that she brought into the marriage four months later. She now claims that she should not be "penalized" by having that property subject to equitable division. Wife's argument is flawed. The parties agreed on how to divide their tangible personal property and also agreed as to its value. Wife did not dispute the division of that property below or raise the issue by assignment of error on appeal. Further, when the parties reunited in December, 1982, they wrote on a clean slate for the purpose of analyzing their property interests.

[11] As we said in *Debord and Debord,* 95 Or App 544, 548, 770 P2d 81, *on reconsideration* 96 Or App 767, 770 P2d 81 (1989), "[i]t has not been particularly helpful to categorize marriages as short term or long term and subject each category to different rules."

skills and her ability to maintain her current earnings are deteriorating. She is 39 years old and testified that she will not be able to work at heavy labor in the mill much longer. Dr. Rollins, who has treated wife, reported that she has chronic back pain. Rollins could not say for certain whether wife will become disabled, but he did conclude: "I do have serious reservations regarding how long she will be able to continue [performing heavy labor]." Wife testified that the spousal support will enable her to retrain herself by attending a secretarial course. *See* ORS 107.105(1)(d)(D), (E), (F). Moreover, spousal support will allow wife to achieve and then to maintain a standard of living "not overly disproportionate to that enjoyed during the marriage." ORS 107.105(1)(d)(M); *Richardson and Richardson, supra,* 307 Or at 383. We award wife $200 per month spousal support for 24 months effective on the first day of the month after the effective date of the appellate judgment.

Finally, the trial court did not abuse its discretion in denying wife attorney fees. *Frishkoff and Frishkoff,* 45 Or App 1033, 1046, 610 P2d 831 (1980).

We modify the amended judgment:

1. The judgment awarded wife in paragraph 3d is changed from $14,431 to $6,394.

2. Paragraph 3e is deleted.[12]

3. Wife is awarded spousal support of $200 per month for 24 months, effective on the first day of the month after the effective date of the appellate judgment.

Affirmed as modified. No costs to either party.

---

[12] Paragraph 3e sought to account for the depletion in the Shearson Stock Account. As modified, the judgment incorporates that depletion in paragraph 3d.