Argued and submitted October 26, judgment remanded in part; otherwise affirmed
December 27, 1995

In the Matter of the Marriage of

Sandra Kay CRUMP,
*Respondent,*

*and*

James Alton CRUMP,
*Appellant.*

(15-94-02110; CA A87526)

908 P2d 839

Jeffrey E. Potter argued the cause for appellant. With him on the briefs were F. William Honsowetz and Lombard, Gardner, Honsowetz, Potter & Budge.

Allen J. LeCompte argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Husband appeals a judgment of dissolution, challenging the award of spousal support and judgment in favor of wife for a support arrearage accumulated from a temporary support order. We review *de novo*, ORS 107.405, ORS 19.125(3), and remand for modification of the judgment.

Husband and wife, who are in their mid-40s, separated in February 1994, after 10 years of marriage. They have no children from their marriage, although both have children from previous marriages. Husband works for the Postal Service and is paid $16 an hour, or $2,752 a month based on a 40-hour week. In addition, in recent years, husband has worked a substantial amount of overtime, bringing his monthly income to roughly $4,000. Before and during most of the marriage, wife worked at various positions in restaurants or taverns in Eugene.

In March 1994, wife filed a petition for dissolution and a motion for temporary relief. Pursuant to ORS 107.095,[1] the court awarded temporary spousal support in May 1994, ordering husband to pay $350 toward monthly house and land payments and $450 per month for temporary spousal support, beginning June 1, 1994. In addition, the court ordered wife to pay $380 per month towards the total monthly house and land payments of $730.

At the time wife filed the petition, she was working as a manager for a fraternal club, earning between $1,600 and $1,700 per month. However, in May 1994, wife moved to Prineville and began working as a forestry technician for the U.S. Forest Service. The seasonal position pays $7.22 per hour, but is limited by contract to a maximum of 1,039 hours a year.

---

[1] ORS 107.095 provides, in part:

"(1) After the commencement of a suit for marital annulment, dissolution or separation and until a decree therein, the court may provide as follows:

"(a) That a party pay to the clerk of the court such amount of money as may be necessary to enable the other party to prosecute or defend the suit, including costs of expert witnesses, and also such amount of money to the Department of Human Resources, court clerk or court administrator, whichever is appropriate, as may be necessary to support and maintain the other party."

From June to December 1994, husband failed to pay any temporary spousal support, incurring an arrearage of $2,700. However, from June until September 1994, when the parties' home was sold, husband paid the entire house and land payment of $730, including the $380 that wife had been ordered to pay under the temporary support order. In January 1995, the court entered a judgment of dissolution that directed husband to pay wife support of $500 per month for two years, beginning December 1, 1994, and $300 per month for the ensuing two years. The judgment also awarded wife $2,700, representing the temporary support arrearage.

■ Husband first assigns error to the award of spousal support. In entering that award, the court referred to "[w]ife's right to support * * * upon a standard of living experienced during the marriage," and found "a significant disparity in income":

> "Husband is employed by the U.S. Postal Service. Wife has worked for and expects improved employment with U.S. Forest Service. Currently she is receiving unemployment benefits. She anticipates earning $1,200.00 a month when she becomes employed full time. Husband earns at least $4,000.00 per month, but hopes to reduce overtime hours which may result in lower earnings in the future."

Husband argues that the trial court erroneously considered wife's earning potential to be $1,200 per month—the amount she would earn if she ultimately worked for the Forest Service in a full-time position.[2] He contends that the proper measure of wife's earning capacity is actually $1,700 per month—the amount she made in the restaurant industry during the marriage.

■ ORS 107.105(1)(d) prescribes the factors governing awards of spousal support.[3] Among those factors is "[t]he

---

[2] Wife anticipated that, after working for the Forest Service between two and five years, she would be hired full-time.

[3] ORS 107.105 provides, in part:

"(1)   Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(d)   For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute[.] * * * In making such support order, the court shall consider the following:

earning capacity of each party, including educational background, training, employment skills and work experience[.]" ORS 107.105(1)(d)(D). Thus, in assessing earning capacity, the court considers a range of considerations other than actual current income to determine the parties' earning capacity. The parties' work histories and qualifications are especially significant in that inquiry. *See, e.g., Harper and Harper*, 122 Or App 9, 12-13, 856 P2d 334, *rev den* 318 Or 246 (1993), *cert den* ___ US ___, 114 S Ct 2103, 128 L Ed 2d 664 (1994); *Furlong and Furlong*, 120 Or App 105, 107-09, 852 P2d 233 (1993).

Husband, citing *Auld and Auld*, 72 Or App 747, 697 P2d 220 (1985), argues that, although wife may have the right to choose a lower-paying career, he is not obligated to subsidize that choice. In *Auld*, we held:

"[W]ife is employable as a real estate salesperson and a school teacher. She is not presently employed, because she has made a career choice to work in interior design. * * * Husband agrees that wife has the right to change careers but that it is inequitable to require him to pay for her career training for the third time. We agree. Wife is young and healthy. She is employable and capable of self sufficiency without additional education. She has not been absent from

---

"(A) The length of the marriage;

"(B) The age and physical and mental health of the parties;

"(C) The contribution by one spouse to the education, training and earning power of the other spouse;

"(D) The earning capacity of each party, including educational background, training, employment skills and work experience;

"(E) The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F) The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker[;]

"* * * * *

"(K) The standard of living established during the marriage;

"* * * * *

"(M) Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

the job market, and she has no long term financial obligations. We therefore modify the decree to eliminate spousal support." 72 Or App at 751.

Like the wife in *Auld*, wife here has shown no reason why her earning capacity should be measured by reference to her income following a voluntary career change — much less a post-separation voluntary change. There is no evidence in the record that wife needed to relocate to a smaller town with proportionately lower wages and opportunities. Nor is there any evidence that her career in restaurant work was debilitating or limited in either duration or opportunity for advancement. Finally, there is no evidence that the Forest Service job, even if it eventually becomes full-time, will provide more stability, training in marketable skills, or offer better health or retirement benefits. In short, this is not a situation in which support would enable wife to become more employable through education, retraining, or a career that leads to "becom[ing] self supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible." ORS 107.105(1)(d)(E). *See, e.g., Wight and Wight*, 105 Or App 188, 804 P2d 494 (1991) (wife entitled to spousal support where she put aside opportunity for education and employment for the benefit of the family); *Holt and Holt*, 97 Or App 192, 776 P2d 7 (1989) (spousal support appropriate where evidence showed that retraining was necessary because wife's ability to maintain her current earnings through heavy labor was deteriorating).

■    Husband further asserts that, in addition to wife's $1,700 earning capacity from restaurant-related work, the court should consider her receipt of $200 per month from a judgment for approximately 14 years of back child support from a previous marriage. Because wife is no longer supporting that child, who is over 18, that $200 monthly stream of income is properly attributed to her. Consequently, we find that wife's monthly income, based on her earning capacity of $1,700, is $1,900, not $1,200 as the trial court presumed.

■    Husband next contends that the trial court not only understated wife's monthly income, but also overstated his income. In particular, he argues that the court erroneously determined his income by including substantial earnings

from overtime work. Husband's gross income, without overtime, is approximately $2,750 per month. With overtime, husband's monthly income is at least $4,000. The trial court found that husband "earns at least $4,000 a month, but hopes to reduce overtime hours which may result in lower earnings in the future." Husband contends that he was working overtime only to pay off marital debts; that once the debts are paid he intends to reduce his work hours; and that "it would be extremely inequitable" to calculate his income based on an assumption that he will continue to earn substantial overtime.

We disagree. In *Sigler v. Sigler*, 133 Or App 68, 889 P2d 1323 (1995), we held that the trial court erred in excluding husband's overtime from its support calculation, even where husband had health problems and his employer was considering cutting back on the availability of overtime:

"The court may forecast a person's potential income as a basis for calculating an appropriate spousal and child support obligation. * * * Overtime is appropriately considered in making that calculation when it is earned on a regular basis." *Id.* at 71.

Like husband here, the husband in *Sigler* still worked regular overtime at the time of trial, and "simply testified that he would rather not continue to [work overtime] in the future." *Id.*, 133 Or App at 72. We hold that, the trial court correctly estimated husband's current earning capacity as $4,000 per month.

■ ■ We turn, then, to reviewing the award of spousal support in the light of our determination that wife's monthly income is $1,900 and husband's is $4,000. In setting the amount and duration of spousal support, we attempt to arrive at "such amount of money for such period of time as it may be just and equitable." ORS 107.105(1)(d). The award, if any, is not intended to equalize the parties' incomes. *Christensen and Christensen*, 123 Or App 412, 859 P2d 1192 (1993). Rather, it should enable the party receiving the support to enjoy a standard of living that is not "overly disproportionate to that enjoyed during the marriage, to the extent that that is practicable." ORS 107.105(1)(d)(F). *See Grove and Grove*, 280 Or 341, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977).

Using the factors outlined in ORS 107.105(1)(d), we conclude that the trial court erred in awarding spousal support in this case. In particular, the marriage was not lengthy, the parties are healthy, and neither spouse contributed to the other's education, training, or earning power. ORS 107.105-(1)(d)(A)-(C). Although wife's earning capacity of $1,900 per month is considerably less than husband's, it is adequate to meet her expenses as based on the standard of living established during the marriage. ORS 107.105(1)(d)(K). According to her Uniform Support Affidavit, those expenses totalled $1,896 before the sale of the house. That figure did not include income taxes or Social Security withholding (approximately $375 per month), but did include the monthly mortgage payment and property taxes for the family house, which has since been sold. Since moving to Prineville, wife pays rent of $200 per month, rather than $891 for monthly mortgage and property tax payments. Thus, wife's earning capacity is sufficient to cover her expenses, and is "sufficient to achieve a standard of living not overly disproportionate to that enjoyed during marriage." ORS 107.105(1)(d)(M). Additionally, as discussed above, there is no evidence that support is necessary for wife's education or retraining, ORS 107.105(1)(d)(E), nor was wife absent from the job market because of her marriage. ORS 107.105(1)(d)(F). To the extent that wife had any transitional needs, we conclude that those have now been fully satisfied. Accordingly, we remand for modification of the judgment of dissolution to eliminate the award of spousal support as of the date of this decision.

Husband next assigns error to the trial court's support arrearage award of $2,700. He argues that the award of temporary support was erroneous, as unnecessary to support wife during the pendency of the proceedings, and that he therefore cannot be liable for nonpayment of such support. On *de novo* review, without further comment, we conclude that the award was proper. ORS 107.095.

Alternatively, husband argues that, even if the award of temporary spousal support is affirmed, the arrearage award of $2,700 should be modified and reduced to $1,560 to reflect the fact that, for three months, husband paid wife's share of the house payments, totaling $1,140. Husband asserts that, because the $450 in temporary spousal support

was awarded in part to enable wife to make those house payments, his temporary support obligation was, thus, implicitly reduced. Husband's argument targets only the arrearage award. He did not argue below that the property division should account for his additional contributions to the house payments, and does not now assign error to the property division.

As we recently held in *Alls and Alls*, 137 Or App 32, 34, 902 P2d 1204 (1995), a support arrearage judgment cannot be modified in the manner husband urges:

> "Under ORS 107.095(2), each payment under the temporary support order that was not paid by its due date became a judgment and could not be canceled. *Warren and Warren*, 31 Or App 213, 218, 570 P2d 104 (1977). Husband argues that the trial court had good reason to forgive the debt and, if the methodology the court used was legally impermissible, we should order an equalizing $2,800 judgment against wife. We do not agree. The *pendente lite* order was not a division of property. It was to provide assistance to wife and the parties' child while the dissolution was proceeding."

Thus, the arrearage award in this case cannot be modified to reflect an offset for husband's greater contributions to the house payments.

Judgment of dissolution remanded for modification to eliminate spousal support as of date of appellate decision; otherwise affirmed. Costs, not including attorney fees, to husband.