In re the MARRIAGE OF Deann Patricia SCHRINER and John Kenneth Schriner

Upon the Petition of Deann Patricia Schriner, Appellee,

And Concerning John Kenneth Schriner, Appellant.

No. 03–1131.

Supreme Court of Iowa.

April 29, 2005.

James W. Affeldt and Robert M. Hogg of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellant.

Matthew J. Brandes and Elizabeth V. Croco of Simmons, Perrine, Albright & Elwood, P.L.C., Cedar Rapids, for appellee.

CADY, Justice.

In this appeal, we must primarily decide whether or not workers' compensation benefits awarded to one spouse during the marriage become divisible property at the time of the divorce. The district court considered the past and future compensation payments as a divisible asset, and our court of appeals affirmed the district court. On further review, we conclude workers' compensation benefits received and retained during the marriage are a divisible asset, but future proceeds are the separate

property of the injured spouse. We vacate the decision of the court of appeals and affirm the district court decree as modified by this opinion.

## I. Background Facts and Proceedings

DeAnn and John Schriner were married for thirty-three years—from 1970 until 2003. They had three children during the marriage. DeAnn stayed home with the children for twelve years while John worked in maintenance and as an electrician. At the time of the divorce, he was employed full-time as an electrician for Quaker Oats. He earned $25.38 per hour. His annual income was $70,181. John generally worked overtime throughout his career. In 1984, DeAnn began working at the office of the Linn County clerk of court, where she continued to work at the time of the divorce. She earned $15.86 per hour, and her annual income was $28,353.

In May 2001, John suffered a work-related injury to his neck. He filed a workers' compensation claim and was awarded 125 weeks of benefits at $731.26 per week. At the time of the divorce, John had received eighty-one payments totaling $59,151. He expected to receive forty-four future payments totaling $32,256. John suffered another work-related injury to his lower back in January 2003. He claimed this injury made him unable to work overtime.

DeAnn and John separated in January 2002, and DeAnn petitioned for dissolution of the marriage the following month. Because DeAnn claimed the workers' compensation benefits received by John were marital property, John retained the funds in a separate account pending the dissolution of marriage.

The case was tried to the district court, which resulted in a decree for dissolution

of marriage on May 29, 2003. The court awarded DeAnn $1400 per month in spousal support until age sixty-six and $700 per month after that time until her death, John's death, or her remarriage. In awarding spousal support, the trial court included John's overtime earnings in considering his ability to contribute to DeAnn's support. The district court equally divided the property of the parties. This resulted in a property award to each party valued at $264,488. In making the property division, the district court included the workers' compensation award from John's injury in 2001 as divisible property. Of the $59,151 paid out to John and held in a separate account, the district court awarded DeAnn $22,110 and awarded John $37,041. The district court then awarded the forty-four weeks of remaining benefits, valued at $32,131, to John. DeAnn made no claim to the workers' compensation benefits payable on account of John's most recent injury, and the court did not include those benefits in the property distribution scheme.

John appealed, and we transferred the case to the court of appeals. The court of appeals affirmed the district court decree. On further review, John claims the workers' compensation award was income and should have been excluded as an item of marital property subject to division by the district court. He also claims his overtime income cannot be considered in determining spousal support because his work injury prevented him from working overtime. He further claims he should not be required to work overtime to support DeAnn when she does not support herself by working overtime.

## II. Standard of Review

Our review in dissolution cases is de novo. *In re Marriage of Benson*, 545 N.W.2d 252, 253 (Iowa 1996); Iowa R.App.

P. 6.4. " 'Although our review of the trial court's award is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity.' " *In re Marriage of Romanelli*, 570 N.W.2d 761, 763 (Iowa 1997) (citing *In re Marriage of Spiegel*, 553 N.W.2d 309, 319 (Iowa 1996)).

### III. Workers' Compensation Benefits as Divisible Property

■ Like most other states, Iowa is known as an "equitable distribution" jurisdiction for purposes of dividing property in a dissolution of marriage. *In re Marriage of McNerney*, 417 N.W.2d 205, 207 (Iowa 1987) (citing Iowa Code § 598.21(1) (1985)). *See generally* Joseph A. McKnight, *Defining Property Subject to Division at Divorce*, 23 Fam. L.Q. 193 (1989). "Equitable distribution" essentially means that courts divide the property of the parties at the time of divorce, except any property excluded from the divisible estate as separate property, in an equitable manner in light of the particular circumstances of the parties. *McNerney*, 417 N.W.2d at 207.

In Iowa, two types of property, inherited property and gifts received by one party, are specifically excluded by statute from the divisible estate. Iowa Code § 598.21(1) (2003). This property is normally awarded to the individual spouse who owns the property, independent from the equitable distribution process. Yet, this exclusion is not absolute. Iowa has a unique hybrid system that permits the court to divide inherited and gifted property if equity demands in light of the circumstances of a spouse or the children. *Id.* § 598.21(2). Property not excluded is included in the divisible estate.

Under our statutory distribution scheme, the first task in dividing property is to determine the property subject to division. The second task is to divide this property in an equitable manner according to the factors enumerated in the statute, *see id.* § 598.21(1), as well as other relevant factors determined by the court in a particular case.

■ Our statute is written to define divisible property as "all property" of the parties, other than the two classes of excluded property. *Id.* The statute provides:

Upon every judgment of annulment, dissolution or separate maintenance, the court shall divide the property of the parties and transfer the title of the property accordingly.... The court shall divide all property ... equitably between the parties....

*Id.* This broad declaration means the property included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party. *In re Marriage of Brainard*, 523 N.W.2d 611, 616 (Iowa Ct.App.1994). Property brought into the marriage by a party is merely a factor to consider by the court, together with all other factors, in exercising its role as an architect of an equitable distribution of property at the end of the marriage. Iowa Code § 598.21(1)(b). More importantly, the statute makes no effort to include or exclude property from the divisible estate by such factors as the nature of the property of the parties, the method of acquisition, or the owner. "All property," except inherited or gifted property, is included, and the circumstances and underlying nature of the included property are generally considered as factors that impact the second task of determining an equitable division, along with all other relevant factors. *See id.* § 598.21(1)(a)–(m).

The question presented by this appeal, one of first impression in Iowa, is how an award of workers' compensation made to one spouse during the marriage fits within the "equitable distribution" framework. John argues that the workers' compensation award received in this case was predicated on an unscheduled injury resulting in a permanent partial disability and was primarily intended to compensate him for the loss of his earning capacity over his lifetime. *See Trade Prof'ls, Inc. v. Shriver,* 661 N.W.2d 119, 123 (Iowa 2003) ("To evaluate an unscheduled disability, courts use the industrial method, which measures an employee's loss of earning capacity." (citing *Simbro v. Delong's Sportswear,* 332 N.W.2d 886, 887 (Iowa 1983))). Consequently, John claims the workers' compensation award, like inherited and gifted property, should fairly and logically be set aside to him and excluded from the property division.

The approach advocated by John has been adopted in many other jurisdictions and has become known as the "analytic approach" to distribution of workers' compensation. *See generally* Annotation, *Divorce and Separation: Workers' Compensation as Marital Property Subject to Distribution,* 30 A.L.R.5th 139, 150 (1995) [hereinafter *Divorce and Separation*]. States that follow this approach primarily look to the underlying nature of the loss that makes up the award. *See id.* (stating that analytical approach "look[s] to the nature of the underlying loss"). Under this method of distributing workers' compensation,

> [a]ny portion awarded to compensate for lost wages during the marriage or for medical expenses paid with marital funds is marital property. Any portion paid to compensate an individual for lost premarital or postmarital wages or for medical expenses paid with separate

funds is the injured spouse's separate property.

*Id.*

Other states follow what is known as the "mechanistic approach." *Id.* Under this approach, a workers' compensation award is property subject to division "if the award was received, or the right to receive the award accrued, during the marriage." *Id.* This approach is commonly used in "equitable distribution" states because it is derived from the underlying statutory directive that all property is equitably distributed except property expressly excluded by statute. This method primarily focuses on the timing of the award. *Id.*; *Drake v. Drake,* 555 Pa. 481, 725 A.2d 717, 725 (1999). A few other states treat workers' compensation benefits "as the sole and separate property of the injured spouse." *Divorce and Separation,* 30 A.L.R.5th at 150. This is known as the unitary approach. *Id.* Still, other courts follow approaches that have no designated classification. *Id.*

In *McNerney,* we specifically recognized the various distribution approaches in holding that proceeds received during the marriage from a personal injury lawsuit constituted property subject to an equitable division at the time of the divorce. 417 N.W.2d at 208. In doing so, we concluded it was

> more just to allow a trial court the flexibility to divide property equitably on a case-by-case basis and therefore we adopt what is called the mechanistic approach. Settlement proceeds thus do not automatically belong to either party.

*Id.*

While some differences exist between a personal injury award and a workers' compensation award, the overall approach adopted in *McNerney*—that is, limiting property excluded from the divisible estate to the specific exclusions established by

the statute and relying upon the equitable powers of the court to reach an overall equitable distribution scheme of all of the property—is generally compatible with treating workers' compensation benefits as a divisible asset. If our legislature had wanted to exclude workers' compensation benefits from divisible property, we think it would have included the benefits in the list of exceptions along with inherited and gifted property. *See State v. Truesdell,* 679 N.W.2d 611, 617 (Iowa 2004) ("We apply statutes as written by our legislature, and resort to our rules of construction in the event of an ambiguity." (citing *State v. Albrecht,* 657 N.W.2d 474, 479 (Iowa 2003))). Our statute is very clear. It states: "The court shall divide *all property, except inherited property or gifts received by one party* equitably...." Iowa Code § 598.21(1) (emphasis added). Because the legislature expressly excluded two items of property from equitable distribution, we can infer that it intended all other property to be equitably distributed. *Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.,* 650 N.W.2d 609, 618 (Iowa 2002) ("Generally, the express mention of one thing in a statute implies the exclusion of others. Thus, when a legislative body delineates exceptions, it is presumed that no others were created or intended." (Citations omitted.)).

John seeks to avoid this outcome by claiming that workers' compensation benefits are not actually property, but income. Thus, he essentially argues that our legislature did not specifically exclude workers' compensation benefits as divisible property because workers' compensation benefits are not considered to be property. Moreover, he asserts his specific compensation award largely represented future income.

■ We recognize that workers' compensation benefits *awarded after a dissolution are* considered to be income for purposes of determining child support, whether received in a lump sum or paid weekly. *In re Marriage of Swan,* 526 N.W.2d 320, 325 (Iowa 1995). Workers' compensation benefits represent income in a dissolution because the benefits essentially replace income that would otherwise have been earned had the worker not been injured. *Id.* Yet, this view of workers' compensation does not mean that benefits received and retained *during the marriage* cannot be considered property at the time of the divorce. Child support is mainly predicated upon earnings, but retained earnings ultimately become property.

■ We acknowledge that future earnings of a spouse from employment are not considered to be property at the time of the divorce. *See In re Marriage of Horstmann,* 263 N.W.2d 885, 891 (Iowa 1978) (advance degree is not itself an asset for property division, but an increased earning capacity is a factor to consider in making an equitable distribution of property). However, even if workers' compensation proceeds represent future earnings, once received and retained during the marriage, the proceeds become property of the marriage. As property of the marriage, we do not attempt to apportion the proceeds received between lost earnings before the divorce and earnings after the divorce under the approach we adopted in *McNerney.* Thus, our treatment of workers' compensation proceeds as income means that the benefits become part of the divisible estate when received and retained during the marriage, just as other income becomes property when received and retained during the marriage. This leaves us with the question whether workers' compensation proceeds received after the divorce can become divisible property.

■ We have previously held that courts may properly divide some assets in a dissolution of marriage that may have no

present value, such as future royalties, as they are received in the future. *In re Marriage of White*, 537 N.W.2d 744, 747 (Iowa 1995). However, these assets can be considered part of the divisible estate because they are essentially derived from activities that occurred during the course of the marriage. As with pensions, a future interest is properly considered as a marital asset subject to distribution at the time of the divorce to the extent the future interest accrues during the marriage. *See In re Marriage of Howell*, 434 N.W.2d 629, 632 (Iowa 1989) (stating that Iowa law normally views pensions as property because they are a form of deferred compensation accrued during the marriage). On the other hand, future earnings from future employment do not accrue during the marriage and are not property. Consequently, it follows that workers' compensation proceeds received after the divorce are separate property of the injured spouse. *See id.* at 632–33 (military disability benefits for injuries in the line of duty are not compensation for past services rendered).

■ Overall, the approach we adopt towards workers' compensation benefits allows the trial court the greatest opportunity to accomplish justice in each case. It permits the court to consider the same arguments John urges in support of treating the benefits as separate property in deciding how the benefits should be equitably divided, along with all the other relevant factors and circumstances of each case. *See Drake*, 725 A.2d at 726–27. For example, the statutory factors considered in reaching an equitable distribution of all property include the age and physical health of the parties, earning capacity of the parties, economic circumstances of each party, including future interests, and any other relevant factors. Iowa Code § 598.21(1). These factors authorize the court to consider the disability of an injured spouse and could support an award of a larger portion of property to a disabled spouse, including a larger portion, or all, of the workers' compensation benefits. Conversely, the same statutory factors could permit a court to use workers' compensation benefits expected to be received by an injured spouse after the divorce as a circumstance to justify an award to the other spouse of a larger portion of the property subject to division. In the end, the award, one way or the other, is a product of both the items of property included in the divisible estate and all other relevant factors that impact the equitable distribution of that property. An equitable distribution does not mean an equal division. *See In re Marriage of Webb*, 426 N.W.2d 402, 405 (Iowa 1988).

Consistent with *McNerney*, and our statutory distribution scheme, we hold that workers' compensation benefits received up to the time of the dissolution are property subject to an equitable division *to the extent they have been retained and not spent*. Benefits received after the divorce constitute separate property of the injured spouse. We continue to adhere to the mechanistic approach adopted in *McNerney* and rely upon the relevant statutory factors to reach an overall equitable distribution of the property.

In dividing the Schriners' assets, the district court improperly included the $32,256.44 of workers' compensation benefits John was yet to receive for his 2001 injury. The remaining benefits should have been treated as future income, not property subject to equitable distribution. The district court included the $32,256.44 in the Schriners' total assets subject to equitable distribution to arrive at a total of $528,927.21. The court then divided this number in half and awarded each party $264,488.60. Instead, we subtract the

$32,256.44 from the Schriners' total assets. This yields $496,670.77. We divide that amount equally, as the district court did, and find DeAnn should have been awarded $248,335.38, and John should have been awarded $248,335.39. We find no circumstances to justify a division other than an equal award, even excluding the future workers' compensation payments as divisible property. DeAnn was awarded $16,153.22 more then she should have been awarded. Thus, we find the equalizing payment to DeAnn should be reduced from $22,109.99 to $5956.77.

## IV. Inclusion of Overtime Pay in Calculation of Alimony

John's second argument is that the district court's alimony award was excessive. His principal complaint is that "the trial court wrongly assumed that John would continue to work significant overtime hours when, in fact, such overtime is unlikely given his age and repeated workplace injuries." Iowa Code section 598.21(3) provides:

Upon every judgment of annulment, dissolution or separate maintenance, the court may grant an order requiring support payments to either party for a limited or indefinite length of time after considering all of the following:

a. The length of the marriage.

b. The age and physical and emotional health of the parties.

c. The distribution of property made pursuant to subsection 1.

d. The educational level of each party at the time of marriage and at the time the action is commenced.

e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

i. The provisions of an antenuptial agreement.

j. Other factors the court may determine to be relevant in an individual case.

We have never decided whether overtime pay of the obligated spouse should be included in the determination of the amount of alimony. However, in *In re Marriage of Brown*, we held that when the "overtime has been consistent, will be consistent, and is somewhat voluntary" and when the "overtime pay is not an anomaly or speculative," the noncustodial parent's overtime pay is properly considered in determining the amount of child support due. *In re Marriage of Brown*, 487 N.W.2d 331, 334 (Iowa 1992). Further, in *In re Marriage of Elbert*, our court of appeals held the *Brown* analysis was equally applicable to the calculation of spousal support. *In re Marriage of Elbert*, 492 N.W.2d 733, 735 (Iowa Ct.App.1992). Several other courts have held that overtime pay may be considered in setting alimony. Christopher Vaeth, *Consideration of Obligated Spouse's Earnings from Overtime or "Second Job" Held in Addition to Regular*

*Full–Time Employment in Alimony or Child Support Awards*, 17 A.L.R.5th 143, 164–65 (1994 & Supp.2004); *see, e.g., In re Marriage of Vashler*, 183 Mont. 444, 600 P.2d 208, 212 (1979); *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122, 126 (1991); *In re Marriage of Crump*, 138 Or.App. 362, 908 P.2d 839, 843 (1995); *Hillberry v. Hillberry*, 195 W.Va. 600, 466 S.E.2d 451, 456 (1995).

Although John "questions" whether *Brown's* analysis should be applied to alimony awards in general, he primarily argues that his overtime should not considered in this particular case because it is speculative and uncertain. *See In re Marriage of Brown*, 487 N.W.2d at 333 ("[I]n circumstances where overtime pay appears to be an anomaly or is uncertain or speculative, a deviation from the child support guidelines may be appropriate." (citing *In re Marriage of Close*, 478 N.W.2d 852, 854 (Iowa Ct.App.1991))). As DeAnn's brief correctly notes, the only evidence John has that his continued receipt of overtime pay is uncertain or speculative is his own testimony that "I don't think I can physically work that many hours any more.... I'm not sure that with the way my back feels right now, 40 hours is about all I can handle." John did not have any medical restrictions on the hours he could work, and he had continued working overtime after his back injury. The district court apparently did not find John's testimony convincing in view of the other evidence. We give weight to the district court's findings of fact, especially with regard to credibility of witnesses. *Geisinger v. Geisinger*, 202 N.W.2d 44, 46 (Iowa 1972). While John's overtime may in fact decrease or cease in the future, the fact is that at the time of trial, he was working overtime, and he presented no evidence that he was unable to continue. Thus, the overtime pay was not uncertain or speculative, and the district court properly considered it in set-

ting the amount of alimony. *See In re Marriage of Crump*, 908 P.2d at 843 (stating that overtime was properly considered "even where husband had health problems and his employer was considering cutting back on the availability of overtime" (citation omitted)). As the court of appeals observed, if John stops working overtime, he can apply for a modification.

■ We also reject John's claim that he should not be required to work overtime to meet his spousal support obligation when DeAnn does not work overtime to support herself. An award for spousal support is not a quid pro quo, and the spouse seeking support does not need to work overtime before a court may consider overtime work by the other spouse in fixing the amount of the award. Spousal support is based on all the relevant factors, and there was no evidence in this case that DeAnn's earnings were not commensurate with her earning capacity.

## V. Conclusion

We modify the district court judgment to reduce the amount of DeAnn's equalizing payment from $22,109.99 to $5956.77. We affirm in all other respects. Although John briefed several issues in addition to those we have discussed, these issues were not raised in his application for further review, and we decline to exercise our discretion to consider them. *See State v. Doggett*, 687 N.W.2d 97, 99 (Iowa 2004) (noting discretion to consider any or all issues raised in application for further review (citing *State v. Powell*, 684 N.W.2d 235, 237–38 (Iowa 2004); *Bokhoven v. Klinker*, 474 N.W.2d 553, 557 (Iowa 1991))). We also conclude each party is responsible for his or her own appellate attorney fees. *See In re Marriage of Davis*, 608 N.W.2d 766, 773 (Iowa 2000)

("An award of appellate attorney fees in a dissolution proceeding is discretionary." (citing *In re Marriage of Ask,* 551 N.W.2d 643, 646 (Iowa 1996))).

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT**

**JUDGMENT AFFIRMED AS MODIFIED.**