# IN THE COURT OF APPEALS OF IOWA

No. 21-1020
Filed May 11, 2022

IN RE THE MARRIAGE OF SHEILA L. KLAREN
AND SCOTT D. KLAREN

Upon the Petition of
SHEILA L. KLAREN,
   Petitioner-Appellee,

And Concerning
SCOTT D. KLAREN,
   Respondent-Appellant.

_____

   Appeal from the Iowa District Court for Delaware County, Monica L. Zrinyi

Ackley, Judge.


   Scott Klaren appeals the physical-care and property-division provisions of

the parties' dissolution-of-marriage decree. **AFFIRMED**.


   Thomas J. Viner of Viner Law Firm P.C., Cedar Rapids, for appellant.

   David G. Thinnes of Howes Law Firm, P.C., Cedar Rapids, for appellee.


   Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

In this dissolution-of-marriage action, the record reveals that Sheila and Scott Klaren were married in 2007 and have four minor children. At their trial in 2021, Sheila requested physical care of the children and Scott requested joint physical care. The parties also disagreed on property-division issues. Following trial, the district court granted physical care of the children to Sheila with visitation to Scott and divided the parties' property. Scott appeals.

## I.      Standard of Review

The standard of review in dissolution-of-marriage actions is de novo.[1] We give weight to the district court's findings of fact, especially as to witness credibility, but we are not bound by them.[2] "We will disturb the district court's 'ruling only when there has been a failure to do equity.'"[3]

## II.      Analysis

Scott raises two issues on appeal. First, he argues the parties should have been granted joint physical care of their children. Second, he challenges the property division as being inequitable. We address each issue separately.

### A.      Physical Care

We begin our discussion of the physical-care issue with the legal principles that apply. "'Physical care' means the right and responsibility to maintain a home for the minor child and provide for the routine care of the child."[4]

---

[1] *In re Marriage of Miller*, 966 N.W.2d 630, 635 (Iowa 2021).
[2] *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).
[3] *McDermott*, 827 N.W.2d at 676 (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)).
[4] Iowa Code § 598.1(7) (2019).

"Joint physical care" means an award of physical care of a minor child to both joint legal custodial parents under which both parents have rights and responsibilities toward the child including but not limited to shared parenting time with the child, maintaining homes for the child, providing routine care for the child and under which neither parent has physical care rights superior to those of the other parent.[5]

If joint legal custody is awarded to both parents, the court may award joint physical care to both joint custodial parents upon request of either parent. . . . If the court denies the request for joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child.[6]

In considering any physical-care arrangement, we consider what is in the children's best interests, not what is perceived as fair to the parents.[7] Children should be placed in an environment that will bring them to physical and mental health and social maturity.[8] The nonexclusive factors provided in Iowa Code section 598.41(3) are relevant considerations in determining the physical-care arrangement that will be in the children's best interests.[9] The factors include

suitability of parents, whether psychological and emotional needs and development of [the] child will suffer from lack of contact with and attention from both parents, quality of parental communication, the previous pattern of caregiving, each parent's support of the other, wishes of the child, agreement of the parents, geographic proximity, and safety.[10]

Stability, approximation, and continuity of care are also important factors to be considered, and they tend to favor the parent who, prior to separation, was

---

[5] Iowa Code § 598.1(4).
[6] Iowa Code § 598.41(5)(a).
[7] *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).
[8] *Hansen*, 733 N.W.2d at 695.
[9] *Hansen*, 733 N.W.2d at 696.
[10] *Hansen*, 733 N.W.2d at 696.

primarily responsible for the children's physical care.[11]  Conflict between parents is also a significant consideration in determining whether shared physical care is appropriate.[12]  When one party objects to a shared-care arrangement, it becomes less likely that such an arrangement would be effective.[13]  As always in physical-care matters, the best interests of the children and the unique circumstances of each case are the primary considerations—consideration of these nonexclusive factors is important, but they do not constitute an "iron clad formula or inflexible system of legal presumptions."[14]  If the court determines joint physical care is not in the children's best interests, one of the parents must be selected as the physical caretaker.[15]

Turning to the facts, our de novo review of the record persuades us that Sheila was the children's primary caretaker during the marriage.  She was responsible for the household duties as well as nearly all of the children's school and extracurricular activities.  She worked part-time out of the house when the children were young, and, when they were in school full-time, she transitioned to full-time employment.  In contrast, Scott worked three jobs outside the home: (1) he worked a full-time, regular job; (2) he operated a lawn-care and snow-removal business; and (3) he worked part-time for a local farmer.  Although Scott's trial testimony attempted to challenge this characterization of the division of labor within the household, his challenge was effectively rebutted by a letter he wrote to

---

[11] *Hansen*, 733 N.W.2d at 696–97.
[12] *Hansen*, 733 N.W.2d at 698.
[13] *Hansen*, 733 N.W.2d at 698.
[14] *Hansen*, 733 N.W.2d at 699–700.
[15] Iowa Code § 598.41(5)(b).

Sheila and the children. In that letter, Scott admitted that, when he wasn't working, he would spend his time with friends, at the bar, and pursuing extramarital relationships. Scott is on the sex-offender registry for two convictions stemming from sex offenses with minors, and he is not allowed at the children's schools or many of their activities. This fact hampers Scott's ability to serve as a parent with joint physical care. Scott also has significant mental-health concerns and a history of abuse and violence towards Sheila and at least one of the children.

A temporary matters order granted Sheila physical care of the children, with Scott having visitation every other weekend and non-overnight visits two weeknights per week. While the family was operating under this schedule, there were several instances of police involvement and calls made to the Iowa Department of Human Services. Both parties agreed they have a communication problem between them—exacerbated in part by Scott's girlfriend. By the time of trial, the parties only communicated by email and Sheila was not allowed on Scott's property. During his testimony, Scott did not take responsibility for any significant part in the communication and cooperation difficulties between the parties, attributing the difficulties to Sheila.

In determining joint physical care was not in these children's best interests, the district court stated:

> Sheila has been the long term primary care provider of the children. Scott not only has issues with the sex offender limitations but also with his historical past decisions to be away from the family for three jobs, and excessive extra-curricular interests. He has no past custodial care history on which the court can address his future skills. When he testified that Sheila made all the decisions about the children, he intended that to reflect badly on her. It was not taken that way by the court but instead provided a credible statement from him as to who cared for the children before the separation, who cared

for the children during the separation, and who will continue to do so in the future given her prior track record.

On our de novo review, we agree with the district court's findings and conclusions. The physical caretaker is responsible for promoting the relationship between the children and the other parent.[16] It is clear from the record that Sheila is better suited to accomplish this goal, as well as being better suited to serve as the children's physical caretaker.

Having considered the entire record on our de novo review, we agree with the district court that joint physical care is not in the children's best interests and Sheila is better suited to have physical care of the children.

## B.      Property Division

As we did with the previous issue, we begin with some legal principles. In a dissolution-of-marriage proceeding, the court is to divide the parties' property equitably.[17] An equitable division of property does not require equal division of assets, though equal division is often equitable.[18] What is equitable is determined by the unique circumstances of each case and in consideration of the factors codified in Iowa Code section 598.21(5).[19] As always, on our de novo review, we are not bound by the district court's findings of fact, but we do give them weight, especially as to witness credibility.[20]

The district court determined a value for the parties' assets and debts and divided them between the parties. This resulted in Sheila receiving $52,915 and

---

[16] *See* Iowa Code § 598.41(5)(b).
[17] Iowa Code § 598.21(5).
[18] *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa 2009).
[19] *Hazen*, 778 N.W.2d at 59.
[20] *McDermott*, 827 N.W.2d at 676.

Scott receiving $113,245 of the marital net worth. To counteract this imbalance, Scott was ordered to pay an equalization payment to Sheila of $30,165. When that payment is considered, each party gets an identical share of the parties' net worth—specifically, $83,080 each.

Of course, the conclusion that the parties each got an equal share of the marital net worth is only as strong as the accuracy of the values placed on the parties' assets and debts. This is where Scott attacks. He asserts the district court overvalued his lawn-care and snow-removal business equipment, overvalued the shed where the equipment is stored, and improperly considered him the owner of a recreational vehicle he claims is owned by his girlfriend.

We will address Scott's contentions in order, but, before we do, we first note the district court's findings regarding Scott's lack of candor and credibility, as we give considerable weight to those findings.[21] The district court noted in its ruling that, because of Scott's failure to provide full and accurate information, it was difficult to value the property and equitably divide it. Scott offered testimony regarding assets that contradicted other evidence presented. The court found Scott's testimony at trial regarding financial matters to be less than credible. After our de novo review, we agree with the court. During the course of the marriage, Scott did not share information regarding his income with Sheila. He has a history of working three jobs, but he did not provide credible income information regarding two of those primarily cash-based jobs. Further, he provided very little by way of documentation or evidence of the values of his business equipment, other assets,

---

[21] *McDermott*, 827 N.W.2d at 676.

and claimed encumbrances. The district court noted it did the best it could to assign values, but that task was more difficult due to Scott's lack of candor and failure to provide information. We typically do not disturb the district court's valuation of marital property "when it is within the range of permissible evidence."[22]

Turning to the specifics of the challenged values, Scott testified that his business equipment was worth approximately seven to eight thousand dollars. The district court assigned the equipment a value of $33,700, which is the value Sheila placed on the assets. Sheila's value was based on a schedule Scott prepared on which he had handwritten the list of assets and assigned values to them totaling $33,700. Especially in light of the district court's findings that Scott was not credible, we find the value of $33,700 to be the value best supported by the record.

Scott also takes issue with the value assigned to the shed property. The district court valued the shed property at $64,000. At trial, Scott testified the shed was worth $30,000, a figure he repeats on appeal. The problem for Scott is that this testimony is contradicted by his own affidavit of financial status, which he submitted as an exhibit. In that affidavit, Scott valued the shed property at $64,000. As the district court's valuation of the shed property at $64,000 is supported by Scott's own affidavit, we agree with the court's valuation.

Finally, Scott challenges the district court considering him the owner of a side-by-side, off-road recreational vehicle to which the court assigned a value of $6000. Scott testified the vehicle belonged to his girlfriend. This testimony was

---

[22] *Hansen*, 733 N.W.2d at 703.

rebutted by Sheila's testimony that Scott told the children he purchased it. Further, the record shows that Scott kept the vehicle with his business equipment in the shed, which is consistent with him being the owner of it. Additionally, Scott testified he could provide documentation proving he was not the owner of the vehicle, but he failed to produce any such documentation—a detail noted by the district court in reaching its ruling. The court expressly found that Scott was not credible about the purchase of the vehicle. Although finding Scott to be the owner of the vehicle, the court gave Scott the "benefit of the doubt" and assessed a value of $6000 in spite of there being evidence that the likely value was $16,000. Based on the evidence, coupled with the district court's finding that Scott was not credible, we agree with the conclusion that Scott should be treated as the owner of the side-by-side vehicle at a value of $6000.

Following our de novo review, we agree with the district court's property division in its entirety. We decline to modify it in any way.

## III. Conclusion

The district court correctly declined to grant the parties joint physical care of the children and granted Sheila physical care. We also agree with the district court's valuation and division of the parties' property, finding it to be equitable. We affirm the district court in its entirety.

**AFFIRMED.**