**IN THE COURT OF APPEALS OF IOWA**

No. 13-0854
Filed July 30, 2014

IN RE THE MARRIAGE OF LAURIE DEE HALDEMAN
AND KURT PRESTON HALDEMAN

Upon the Petition of
LAURIE DEE HALDEMAN,
n/k/a LAURIE DEE SWANSON,
          Petitioner-Appellant/Cross-Appellee,

And Concerning
KURT PRESTON HALDEMAN,
          Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Sean W. McPartland,

Judge.


        Laurie Haldeman, n/k/a Laurie Swanson, appeals the district court's

dissolution decree with respect to spousal support, dissipation of assets, and

attorney fees, and Kurt Haldeman cross-appeals.  **AFFIRMED AS MODIFIED.**


        Carolyn J. Beyer of Beyer Law Firm, P.C., Iowa City, for appellant.

        Ryan P. Tang of Law Office of Ryan P. Tang, P.C., Cedar Rapids, for

appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**BOWER, J.**

Appellant and cross-appellee, Laurie Haldeman, n/k/a Laurie Swanson, appeals the district court's decree dissolving her marriage to Kurt Haldeman and awarding her rehabilitative spousal support, while failing to find a dissipation of marital assets and declining her request for attorney fees. Kurt, the appellee and cross-appellant, resists and asserts the court erred when it failed to apply its own findings of fact and conclusions of law to the decree of dissolution. We modify the award of spousal support but see no reason to disturb the remainder of the court's ruling. Therefore, we affirm as modified.

**I.      Background Facts and Proceedings**

Kurt and Laurie were married October 12, 1985. They had been married twenty-seven years at the time of trial. Kurt was fifty-years-old at the time of trial and Laurie was fifty-two. The marriage produced two children, neither of whom were minors at the time of the trial. Both Kurt and Laurie hold bachelor's degrees and Laurie taught both emotionally disturbed teenagers as well as general population high school children for the first five years of the marriage. Kurt has maintained employment as an engineer—currently with Rockwell Collins as a systems engineer—since very early in the marriage.

When the couple's second son was born, they made the mutual decision that Laurie would stay home with the boys and home-school them. Laurie provided home-schooling and primary care services to the children until they graduated from high school. Additionally, both Kurt and Laurie acknowledge Laurie is very handy around the home. Laurie maintains she is extremely frugal,

while Kurt testified that he expressed concerns throughout the marriage that they were "bleeding" and could not expect to keep up the lifestyle to which they were accustomed. Kurt's was the sole income provider during the many years in which Laurie cared for the children.

In early 2006, while taking a karate class, Laurie was kicked and injured. She now reports she is in constant pain due to the resulting back injury. She presented extensive evidence, including her two treating physicians, at trial regarding her diagnosis, pain levels, and ability to work. One physician, Dr. Cearlock, testified Laurie had been diagnosed with thoracic myofascial syndrome, and presents with hyperalgesia—hyper-sensitivity to touch. Dr. Cearlock testified that while Laurie's symptoms may come and go, she should not be expected to maintain full-time work due to her pain level and continuing need for treatment. Laurie's other physician, Dr. Hollensend, a chiropractor, states Laurie has thoracic vertebral subluxation and his adjustments only provide temporary relief. He too opined this will likely be a permanent state for Laurie.

Kurt did not present any rebuttal evidence concerning Laurie's physical condition nor did he cross-examine her physicians. Kurt also agreed Laurie is entitled to some support but claimed it should be limited in time and amount. Kurt maintained Laurie would be able to return to work if she recertified as a teacher. To support his claim, Kurt hired a private investigator who offered twenty-five minutes of surveillance video of Laurie doing day-to-day tasks such as shopping and carrying groceries. She did not display any grimaces of pain or difficulty lifting items in the video. The court noted that Laurie spent much of the

trial grimacing and moving about the courtroom to the distraction of the proceedings. The district court, considering these two opposing depictions of Laurie, concluded she was being disingenuous in the courtroom and exaggerating her condition for the court.

Throughout the marriage, Kurt maintained an individual retirement account (IRA) in his name only to which Laurie did not have access. The IRA operated on a high-risk investment strategy authorized by Kurt. Kurt testified he was aware Laurie was less comfortable with such a risky investment strategy. The IRA's value in 2010 was approximately $180,000, and at the time of trial its value had decreased to around $70,000. There was also a Fidelity fund which Kurt stated he cashed out to pay off a joint credit card debt. That account totaled approximately $12,500 in 2010, and at the time of trial was $9800. Laurie claims Kurt improperly managed the accounts, causing dramatic losses to her detriment. Kurt claims the decline in assets was the result of a risky investment strategy and an overall market decline. Laurie and Kurt presented directly contradictory expert testimony on this issue at trial.

We also note Laurie received a $200,000 inheritance not long before the trial. The parties stipulated the inheritance was not subject to distribution with the other marital assets and its status is uncontested.

The district court awarded Laurie $2000 per month in rehabilitative alimony for sixty months. The court found it was unlikely Laurie was permanently disabled to the point she could never undertake gainful employment and her request for $3000 per month in spousal support for her life was unreasonable.

The court found no evidence to support Laurie's claim Kurt inappropriately dissipated assets and ordered the remaining value of the accounts split between the parties. Finally, the court ordered each party to pay his or her own attorney fees and one-half of the court costs. Dissatisfied with the outcome, both parties appeal.

## II. Standard of Review

Dissolutions of marriage are proceedings in equity and, as such, we review them de novo on appeal. *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013). We defer to the factual findings of the district court, but are not bound by them. *Id.* We will alter the district court's ruling "when there has been a failure to do equity." *Id.* (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)).

Disputes with respect to attorney fees are reviewed for an abuse of discretion. *Id.* The district court's ruling will be overturned only when it "rests on grounds that are clearly unreasonable or untenable." *Id.*

## III. Discussion

Iowa is an equitable distribution state. Iowa Code § 598.21(5) (2009). "Equitable" does not necessarily mean "equal," though equal is often the most equitable result for the parties given each party's circumstances at the time of dissolution. *See Schriner*, 695 N.W.2d at 496. The court will take into consideration factors such as the length of the marriage, the property brought to the marriage by each party, the contribution of each party to the marriage—giving appropriate weight to the economic value of each party's contribution via

6

homemaking and child care—the age and health of the parties, and the earning capacity of each party. Iowa Code § 598.21(5). Property is then divided by the court in an effort to reach an equitable outcome for each party. *Id.*

**A. Spousal Support.** The district court has considerable discretion in determining whether a spousal support award is appropriate as well as in determining its amount. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). The court considers several factors and many of these factors echo the factors considered in the overall determination of equitable distribution. The factors the court considers include: (1) the length of the marriage, (2) the age and health of the parties, (3) the property distribution, (4) the parties' education levels, (5) the earning capacity of the party seeking spousal support, (6) the feasibility of the party seeking spousal support becoming self-supporting at a reasonably comparable standard of living as the one enjoyed during the marriage, and (7) any other factors the court determines to be relevant. Iowa Code § 598.21A.

Because our review is de novo, we view the record as a whole and make our own determination. There is no dispute this was a long marriage—more than twenty-five years. The parties are of comparable ages but, while Kurt is in good health, Laurie's health is questionable. The couple mutually decided Laurie would exit the workforce to care for their children. Thus she currently does not have the required credits to qualify for Social Security. As the district court noted, Laurie clearly leaves the marriage at a financial disadvantage.

Kurt does not dispute that Laurie should have some amount of spousal support. However, he contends the support should be limited in duration and

should not leave him destitute. Laurie is requesting permanent, or traditional, spousal support in the amount of $3000 per month, to continue even if she cohabitates or remarries. Although there is some dispute between the parties concerning Kurt's annual income, it is undisputed that even if Laurie became recertified as a teacher, she likely will earn, at most, one-half of Kurt's salary. To make up the difference, Laurie would have to work more than full-time or work multiple jobs. As Laurie's doctors testified, that is likely not possible.

Iowa recognizes three different types of spousal support: traditional, rehabilitative, and reimbursement. *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). Traditional, the type Laurie seeks, is payable for life so long as the spouse is incapable of self-support. *Id.* Rehabilitative support is limited in duration and is meant to assist the dependent spouse through a period of re-education in order to become independent. *Id.* Reimbursement support allows the supported spouse to share in the independent spouse's future earnings. *Id.* The award of alimony is not an absolute right and is a fact-based determination by the court. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976).

We conclude $3000 monthly permanent spousal support is inequitable and unreasonable. Such an award would leave Kurt in a very difficult position upon his retirement when his income will decrease. However, we recognize Laurie is likely to be in a difficult position, as well. Given Laurie does not qualify for Social Security benefits and is now injured, according to the doctors, her future earning capacity is significantly limited. We conclude an equitable outcome is to award Laurie $2000 per month in traditional spousal support, which

shall end upon her remarriage or cohabitation. Based on the testimony of the doctors, Laurie's earning capacity will be limited even if she is able to return to teaching. However, Laurie does have her inheritance and will be able to supplement her spousal support if she budgets wisely. *See In re Marriage of Stewart*, 356 N.W.2d 611, 613 (Iowa Ct. App. 1984) ("[I]nherited or gifted property can be considered on the issue of alimony.").

**B. Dissipation of Marital Assets.** Laurie claims Kurt mismanaged the IRA and Fidelity accounts, resulting in a significant loss of the marital assets. Kurt claims the losses were the result of a conscious high-risk investment strategy and an overall market decline. Laurie and Kurt presented contradictory expert testimony at trial. Laurie's expert, Cindy Gleason, testified the mismanagement of the money made her sick to her stomach. Gleason, on cross-examination, admitted she could not say the losses were due to any affirmative action on Kurt's part. Kurt's financial expert, his investment advisor, Stephen Mickelson, testified the accounts' losses were within acceptable parameters and could be expected during an economic downturn.

"Dissipation . . . applies when a spouse's conduct during the period of separation 'results in the loss or disposal of property otherwise subject to division at the time of divorce.'" *Kimbro*, 826 N.W.2d at 700–01 (quoting *In re Marriage of Burgess*, 568 N.W.2d 827, 828 (Iowa Ct. App. 1997)). We use a two-pronged test in analyzing dissipation of assets. Prong one requires us to decide whether the alleged purpose of the expenditure is supported by the evidence. *Id.* at 701.

If it is supported by the evidence, then we must decide whether the purpose amounts to dissipation under the circumstances, using the following factors:

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefited the 'joint' marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and amount of, the expenditure.

*Id.* (quoting Lee R. Russ, Annotation, *Spouse's Dissipation of Marital Assets Prior to Divorce as Factor in Divorce Court's Determination of Property Division*, 41 A.L.R.4th 416, 421 (1985)).

The more common dissipation scenario is one in which a spouse is accused of having taken some affirmative action to dissipate assets, such as spending money on unusual, expensive, or inexplicable items, and/or running up credit card debt, etc. *See In re Marriage of Wendell*, 581 N.W.2d 197, 199 (Iowa Ct. App. 1998). While this may have been a poor or simply overly risky investment strategy, it is unlikely Kurt meant to lose nearly seventy percent of his investment. Kurt took no affirmative steps to spend or otherwise disperse the money. Thus, this case can be easily distinguished from other cases finding a dissipation of assets during the marriage. We conclude Laurie's claim Kurt improperly dissipated assets is without merit.

**C. Award of Attorney Fees.** Laurie claims that because of her financial disadvantage leaving the marriage, Kurt should have been ordered by the district court to pay her attorney's fees. The district court denied her request. The award of attorney fees is generally within the district court's discretion. *See In re*

*Marriage of Wessels*, 524 N.W.2d 486, 491 (Iowa 1995). On review, we see no reason to overturn that decision.

On appeal, Laurie also requests an award of appellate attorney fees. This court has discretion in awarding appellate attorney fees and an award is not a matter of right. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). "We consider the needs of the party making the request, the ability of the other party to pay, and whether the party was required to defend the district court's decision on appeal." *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Under the circumstances of this case, we deny Laurie's request for appellate attorney fees.

**D. The Findings of Fact and Conclusions of Law as Applied to the Dissolution Decree.** On cross-appeal, Kurt alleges the district court made an inequitable distribution of assets, particularly with respect to the marital debt. Kurt claims, despite the court's proclamation that the distribution of assets and liabilities should be equal; it distributed the marital debts unequally to his detriment. He claims that, despite the court awarding Laurie approximately half of the assets, she was assigned no marital debt while he was assigned more than $20,000 of debt. He claims the assets and liabilities should be equally split between the parties. However, we note the court's decree assigned two debts to Laurie—the Bank of America debt, as well as the Younker's debt.

Kurt overlooks the well-established proposition that "equitable"—the law in Iowa—does not mean "equal." *See Schriner*, 695 N.W.2d at 496. The district court took into account all of the circumstances each party presented. Kurt's

claim does not comport with the district court findings regarding the stipulations of assets and debts. Specifically, by our calculations, the court assigned Kurt approximately $12,337 in debt, in addition to the $4000 the parties stipulated was his responsibility. On appeal, Kurt incorrectly claims he was assigned nearly $21,000 in debt. We calculate closer to $16,000 in total debt.

We agree with Laurie's reply brief's characterization of Kurt's calculation of the marital debt as "bewildering." Indeed, we fail to see how Kurt is calculating nearly $21,000 in debt. However, this court is also somewhat bewildered by the fact the two debts assigned to Laurie amount to $0 in the parties' stipulation. Upon review, we determine, despite the $0 marital debt assigned to Laurie, the outcome regarding the assignment of marital debt is equitable. Kurt's short-term earning capacity and accumulated retirement savings are significantly greater than Laurie's, allowing him to easily pay the debt assigned to him. Kurt characterizes the district court's calculation as a mathematical error, but we conclude, in fact, Kurt's calculations are flawed and the district court's assignment of marital debt is equitable.

Kurt's claim on cross-appeal is therefore denied.

## IV. Conclusion

In many ways we defer to the judgment of the district court despite the de novo character of this review. The district court bore witness to the demeanor and behavior of the parties and made a judgment as to their sincerity. Because we cannot do that firsthand, those observations are valuable. We affirm the district court's conclusions on the issues of attorney fees and dissipation of

assets.  We deny Kurt's claim on cross-appeal.  Finally, based upon our reading of the record and in the interests of equity, we modify the district court's ruling as to spousal support and award Laurie $2000 per month in traditional spousal support, to end upon her remarriage or cohabitation.

Costs are assessed equally to the parties

**AFFIRMED AS MODIFIED.**