# IN THE COURT OF APPEALS OF IOWA

No. 19-1707
Filed January 21, 2021

**IN RE THE MARRIAGE OF JAMIE L. CHRISTENSEN AND MICHAEL D. CHRISTENSEN**

**Upon the Petition of**
**JAMIE L. CHRISTENSEN,**
        Petitioner-Appellee/Cross-Appellant

**And Concerning**
**MICHAEL D. CHRISTENSEN,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Audubon County, Michael D. Hooper, Judge.

        A father and mother both appeal the district court order modifying the decree dissolving their marriage. **AFFIRMED ON BOTH APPEALS.**

        Theodore R. Wonio of Rasmussen, Nelson & Wonio, P.L.C., Atlantic, for appellant.

        David L. Jungmann of David L. Jungmann, P.C., Greenfield, for appellee.

        Considered by Doyle, P.J., Ahlers, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**AHLERS, Judge.**

Both parties appeal the district court's order ruling on the requested modification of the parties' dissolution of marriage decree. The father argues the district court erred by refusing to modify physical care of the couple's second oldest child and by granting the mother physical care of their third oldest child. The mother argues the district court erred by incorrectly calculating the amount of child support and abused its discretion by failing to require the father to pay her trial attorney fees. Both parents request appellate attorney fees. We address each of these issues in turn.

## I.    Background

The parents divorced in 2010. They had two children together at the time of their divorce: G.C., their oldest child, and A.C. The dissolution of marriage decree awarded joint legal custody to both parents and placed physical care of the children with the mother. The father was granted visitation with the children every other weekend and for two weeks during the summer. The decree also required the father to pay child support and provided for division of medical expenses of the children. In 2011, a consent decree was entered in the dissolution case establishing the father's paternity of C.C., the parties' child born after the original decree was entered. The consent decree directed the father to pay child support and provide medical support for all three children.

The father has been employed with the same company for approximately ten years as a sales representative and consultant. He testified he earned a salary of $52,000 per year. The mother is a licensed practical nurse and at the time of trial was employed as a para-instructor earning $11.00 per hour.

Following the birth of C.C., the mother began a relationship with another man, eventually moving in with him in 2014 and marrying in 2019. During this time, the father and the mother had two more children: J.H, born in 2014, and A.H., born in 2015. The father testified the mother had the father help her conceive because the mother's boyfriend (and later husband) could not have children.

The father filed the current modification proceeding requesting physical care of G.C. and A.C. He also sought a determination regarding legal custody and physical care of C.C., a modification to his child support obligation, and to be allowed to claim the child tax credit and earned income tax credit each year for all three children. The mother filed a separate action seeking determinations of paternity, child custody, and support for J.H. and A.H. That action was joined to the proceedings at issue on appeal.

The case went to trial in June 2019. The district court granted the parties joint legal custody of all five children and granted the mother physical care of A.C., C.C., J.H., and A.H.[1] As for child support, the court determined the father's income was $52,469 per year. The court determined the mother's income was $20,000 per year. The court calculated the parties' respective child support obligations based on the split physical care arrangement, offset the respective obligations, and directed the father to pay the net difference as child support to the mother. *See* Iowa Ct. R. 9.14(4) (requiring offset with split or divided physical care arrangements). The father moved to reconsider, resulting in the district court modifying the father's child support obligation and granting him more visitation

---

[1] The parties stipulated to modifying the decree such that the father would have physical care of G.C.

time, but not otherwise changing the legal custody and physical care determinations. The father appealed and the mother cross-appealed.

## II.     Standards of Review

We review marriage-dissolution proceedings de novo. *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). "Although we give weight to the factual findings of the district court, we are not bound by them." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). When assessing witness credibility, "[t]here is good reason for us to pay very close attention to the trial court's assessment." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). "We will disturb the district court ruling 'when there has been a failure to do equity.'" *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013) (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)). And our overriding concern is the child's best interest. Iowa R. App. P. 6.904(3)(o).

We review trial court decisions regarding attorney fees for abuse of discretion. *Id.*

> We reverse the district court's ruling only when it rests on grounds that are clearly unreasonable or untenable. A ruling is clearly unreasonable or untenable when it is "not supported by substantial evidence or when it is based on an erroneous application of the law."

*Id.* at 698–99 (quoting *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012)).

## III.     Discussion

### a.     Physical Care of A.C. and C.C.

The father first argues physical care of A.C. and C.C. should be placed with him instead of the mother. "Physical care issues are not to be resolved based

upon perceived fairness to the *spouses*, but primarily upon what is best for the *child.*" *Thorpe v. Hostetler*, 949 N.W.2d 1, 6 (Iowa Ct. App. 2020) (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007)). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695. We are guided in this inquiry by the factors listed in Iowa Code section 598.41(3) (2019) and the non-exclusive factors enumerated in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). The father cites the same arguments in support of placing physical care of both C.C. and A.C. with him.

We first consider physical care of C.C. There is no prior physical care order related to C.C. As such, we treat the father's appeal as to C.C. as an appeal from an initial custody determination. We will consider "the previous pattern of caregiving an important factor in an initial custody determination." *McKee*, 785 N.W.2d at 737; *Hansen*, 733 N.W.2d at 696 ("[T]he successful caregiving by one spouse in the past is a strong predictor that future care of the children will be of the same quality.").

On our de novo review, we agree with the district court and conclude placing physical care of C.C. with the mother is in C.C.'s best interest. All of the children have mainly resided with the mother throughout their lives, with the father having regular visitation. By all accounts, C.C. and the other children are healthy, generally do well in school, are active in sports, and are well-adjusted and friendly children. Even so, the father maintains that it is in C.C.'s best interest for him to have physical care. He asserts the mother and her husband's plans to move to a

community thirty to forty-five minutes away were intended to "drive a wedge" between the father and the children.[2] He also claims the mother has otherwise withheld information from him and interfered with his relationship with the children.

We are not convinced the move has imposed a significant impediment to the father's access to C.C. and the other children. While the mother admitted that her motivation for moving was in part to put distance between her and the father, she also explained that the move would move them closer to her husband's employer, give her more opportunities to gain employment and further her education, and would move the family closer to her and her husband's families. The modification as ordered by the district court requires the father and the mother to transfer the children at a public place about equal distance from both homes. Under these circumstances, we do not believe the mother's move warrants placing physical care of C.C. with the father.

Nor are we persuaded the mother's actions in hindering the father's relationship with C.C. rise to such a level as to warrant placing physical care of C.C. with the father. It is true that the mother has sometimes acted to harm the father's relationship with the children. For example, at one point, the mother installed "spyware" on the children's phones to monitor their conversations with the

---

[2] In making this argument, the father's brief included alleged facts regarding an additional move by the mother that are not part of the record, as they purportedly occurred after the record was closed. Of course, since those alleged facts are not part of the record, the father's brief does not properly cite to the record in support of those factual allegations and thus violates Iowa Rules of Appellate Procedure 6.903(2)(f) and 6.904(4). We cannot and do not consider these factual allegations improperly included in the father's brief. *See In re Marriage of Moffatt*, 279 N.W.2d 15, 19 (Iowa 1979) ("[A]s a court of review we must ordinarily limit our consideration to the record made at trial or in supplementary proceedings upon limited remand.").

father. However, the record also reveals that the father is not above attempting to interfere with the children's relationship with the mother. The father has used disparaging terms to refer to the mother. The district court also noted that the father used a mutual acquaintance of the parties to gather evidence in anticipation of trial. Testimony also suggested that the father was not supportive of the children participating in therapy to help the children handle the court proceedings, and he made excuses for G.C. to get out of attending therapy. All in all, neither parent is blemish-free in terms of fostering the children's relationship with the other parent. Having taken into account the blemishes on both sides, we agree physical care of C.C. was properly placed with the mother.

We next consider physical care of A.C. Unlike the matter of C.C.'s physical care, which involved an original physical care determination, physical care of A.C. had already been placed with the mother via a decree entered prior to the start of these proceedings. Thus, we treat the issue regarding A.C.'s physical care as an appeal from a modification decision by the district court. The father therefore bears the burden to "prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). He must further prove that he has "a superior ability to minister to the needs of the children." *Id.* This is a heavy burden, and custody will "be disturbed only for the most cogent reasons." *Id.* (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)).

For the same reasons the evidence did not justify placing physical care of C.C. with the father as an initial custody determination, the evidence falls short of establishing cogent reasons sufficient to justify changing A.C.'s current physical

care arrangement from the mother to the father. Even assuming the mother's move is a substantial change in circumstances, the father has not introduced evidence supporting the view that he is the superior parent. A.C. has done well under the mother's primary care, which has persisted throughout A.C.'s life. Without such affirmative proof, the father cannot show he is the better parent. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 37 (Iowa 2015) (noting that even an "excellent parent who has demonstrated an admirable record of involvement in the lives of the children" cannot show that the parent should receive physical care of a child unless the parent can show the parent's ability to parent the child is superior to the other parent).

### b.      Child Support

On her cross-appeal, the mother argues the district court erred in calculating the amount of child support the father owes to her by (1) excluding at least $13,550 per year in other income claimed to be earned by the father, and (2) improperly accounting for the cost of health insurance coverage carried on the children by the father.

### (1)      The Father's Income

The first issue relates to other income the mother argues should have been included in the father's income for purposes of calculating child support but was not. On our review of the record, we agree with the district court and conclude this other income is largely uncertain or anomalous. We determine a parent's income from "the most reliable evidence presented." *In re Marriage of Wade*, 780 N.W.2d 563, 566 (Iowa Ct. App. 2010). The father and the mother introduced competing evidence to show the father's income. Ultimately, the district court concluded the

father's evidence was more complete. The district court determined the only consistent income the father had was from his regular employment. We agree. While other documents were submitted showing the father had at various times earned extra money from side jobs doing snow removal, putting up grain bins for his brother's business, doing apartment rehabilitation work, and selling woodwork that he produced, these sources of income were inconsistent or temporary. Thus, we conclude the district court correctly determined the father's reasonably expected income is what he earns from working his regular employment.

### (2) Health Insurance Impact on Child Support

Regarding the second issue, the nature of the mother's claims are not entirely clear. As near as we can discern from the briefing, the mother makes two arguments related to health insurance costs that led to a claimed miscalculation of the father's child support obligation.

First, the mother argues the district court erroneously failed to take into account the fact the father was not taxed on the cost of the health insurance premiums withheld from his wages. The mother cites no authority in support of her position, and we find no relevant authority addressing interpretation of the current child support guidelines on the issue of whether the pre-tax nature of certain withholdings from income should be taken into account in calculating a parent's net monthly income. The guidelines themselves provide little guidance or clarity. "Gross monthly income" is defined by the guidelines as "reasonably expected income from all sources," but that definition says nothing about the taxable nature of the income. Iowa Ct. R. 9.5(1). "Net monthly income" is defined by the guidelines as gross monthly income less deductions for various taxes

"calculated pursuant to the guideline method." *Id.* 9.5(2)(a)–(b). The "guideline method" for computing taxes is set forth in rule 9.6. That rule explains what filing status to use in making tax calculations, that the standard deduction applies, and how to apply personal exemptions, but it says nothing about how pre-tax deductions are to be considered in calculating a parent's taxes. *Id.* 9.6(1)–(5).

Although the guidelines themselves provide little clarity on the issue, we keep in mind the purpose of the guidelines is to provide adequate support for the children from the parents "in proportion to their respective incomes." *Id.* 9.3(1). Accurate calculation of the parents' respective incomes would include taking into account the reality of the tax consequences of each parent's income when certain portions of the parent's income are known to be nontaxable. Therefore, we conclude that, when certain income of a parent is known to be nontaxable, the nontaxable nature of that portion of the income should be reflected in the calculation of the parent's tax liability and resulting net monthly income. In this case, we know from the father's paystubs that the health insurance premiums deducted from his wages are deducted on a pre-tax basis. As a result, the district court should not have included the cost of health insurance premiums as part of the father's taxable income when calculating his net monthly income.[3] As a result of this miscalculation, the father's net monthly income was slightly overstated.

---

[3] As previously noted, we agree with the district court's determination that the father's income consisted of wages from his regular employment and those wages total $52,469 per year. It is undisputed the father's health insurance premium cost deducted on a pre-tax basis totaled $3332 per year. Therefore, in calculating the father's net income, the district court should have calculated taxes on taxable income of $49,137 ($52,469.00 – $3332) with no taxes on the remaining $3332, rather than treating all $52,469 as taxable income. This would result in a lower tax

Second, the mother argues the district court erred in making the adjustment to the parties' respective child support obligations (i.e., the mother's child support obligation for the one child in the father's care and the father's child support obligation for the four children in the mother's care) for the cost of health insurance, as required by rule 9.14(5). In particular, the mother asserts the court improperly overstated the upward adjustment of her child support obligation by factoring in the portion of the cost of health insurance for four children rather than one, as required by rule 9.14(5)(b).[4] In reviewing the child support worksheets generated by the district court, it appears that the input error claimed by the mother in fact occurred.

As noted, two mistakes were made in the calculation of child support. The question then becomes what remedy is appropriate. Frequently, when an error is made in calculating child support, we remand to the district court for purposes of recalculating child support after correction of the error. *See, e.g.*, *In re Marriage of Mihm*, 842 N.W.2d 378, 386 (Iowa 2014); *In re Marriage of Leff*, No. 19-0038, 2020 WL 564901, at *6 (Iowa Ct. App. Feb. 5, 2020); *Hoyle v. Lemon*, No. 08-1897, 2009 WL 1913696, at *4 (Iowa Ct. App. July 2, 2009). However, we are

---

liability and a higher net income for the father than the calculation made by the district court, which treated all $52,469 as taxable income.

[4] Rule 9.14(5)(b)(1) states:

> The allowable child(ren)'s portion of the health insurance premium will be calculated as follows:
>
> (1) For a health benefit plan covering multiple individuals, including the child(ren) in the pending action, the allowable child(ren)'s portion is the amount of the premium cost for such coverage to the parent or stepparent that is in excess of the premium cost for single coverage, divided by the number of individuals enrolled in the health benefit plan, excluding the person providing the insurance, and then multiplied by the number of children who are the subject of the pending action.

mindful that the calculation of "net monthly income" as defined by the guidelines "is not an exact science." *In re Marriage of Washburn*, No. 16-2188, 2017 WL 4050178 (Iowa Ct. App. Sep. 13, 2017) (quoting *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 332 (Iowa Ct. App. 2005)). In this case, remand is not necessary. After correcting the above-referenced errors, our recalculation of child support yields figures that are only negligibly different from the child support amounts ordered by the district court. We will not do the parties the disservice of making them incur the time and expense associated with a remand that would outweigh the benefits associated with any potential minor change in the child support figures. The child support amounts ordered by the district court substantially comply with the guidelines and adequately meet the purpose of the guidelines to provide for the children's best interests by requiring the parents to provide adequate support for their children in proportion to their respective incomes. *See* Iowa Ct. Rs. 9.3(1), 9.13 (requiring the court to review stipulations of the parties regarding child support amounts to ensure "substantial compliance" with the guidelines).

### c. Attorney Fees

The mother argues the district court abused its discretion by rejecting her request for the father to pay her trial attorney fees. "An award of attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion." *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). "The controlling factor in awards of attorney fees is the ability to pay the fees." *Id.* Here, we find the district court did not abuse its discretion in declining to award the mother trial attorney fees. We affirm on this issue.

Finally, the father and the mother request appellate attorney fees. The mother's appellate attorney has filed a fee affidavit and the father's attorney has not. Appellate attorney fees are not awarded as a matter of right, but we may award them at our discretion. *In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa 2016). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Id.* (quoting *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997)). Given the mother's limited income, the comparatively greater ability of the father to pay, and the mother's forced obligation to defend the decision of the district court on appeal, which she did successfully, we find the father should be required to pay some of the mother's appellate fees. However, we are also mindful that the mother was unsuccessful on her cross-appeal. *Id.* (declining to award appellate fees to the unsuccessful party). After balancing the relevant factors, the father shall pay $3000 of the mother's appellate attorney fees. Costs on appeal are divided equally between the parties. We reject the father's claim for appellate attorney fees.

## IV. Conclusion

After our de novo review, we affirm the district court in all respects. We conclude it is in A.C.'s best interest to remain in the physical care of the mother. We further conclude it is in C.C.'s best interest for the parties to have joint legal custody of C.C., with the mother to have physical care. We affirm the child support obligations imposed by the district court. We also affirm the district court's decision not to award trial attorney fees to the mother. We order the father to pay $3000 of

the mother's appellate attorney fees and reject the father's claim for appellate attorney fees.

**AFFIRMED ON BOTH APPEALS.**