# IN THE COURT OF APPEALS OF IOWA

No. 20-0855
Filed November 23, 2021

IN RE THE MARRIAGE OF DAVID CZARNECKI
AND TERESA CZARNECKI

Upon the Petition of
**DAVID CZARNECKI,**
    Petitioner-Appellee,

**And Concerning**
**TERESA CZARNECKI,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Harrison County, Margaret Popp Reyes, Judge.

Teresa Czarnecki appeals the financial provisions of the decree dissolving her marriage to David Czarnecki. **AFFIRMED AS MODIFIED.**

Maura Sailer of Reimer, Lohman, Reitz, Sailer & Ullrich, Denison, for appellant.

Shannon Simpson and Ryan J. Muldoon of Simpson Legal Group, LLC, Council Bluffs, for appellee.

Heard by Bower, C.J., and Vaitheswaran and Badding, JJ.

**VAITHESWARAN, Judge.**

Teresa and David Czarnecki divorced after twenty-one years of marriage. On appeal, Teresa challenges the financial provisions of the dissolution of marriage decree.

## I.    *Spousal Support*

Teresa requested "traditional spousal support of $1500 per month." *See In re Marriage of Gust*, 858 N.W.2d 402, 407 (Iowa 2015) ("The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued."). The district court denied the request. The court reasoned:

> While David and Teresa's marriage of 20 years meets this durational threshold for traditional alimony, the evidence at trial shows that Teresa worked throughout the marriage, obtained a college degree during the marriage, and is now working full-time. Teresa is capable of self-support making traditional support not applicable under the facts presented at trial.

The court also denied other forms of spousal support. *See id.* ("Our cases applying the statute have identified three kinds of support: traditional, rehabilitative, and reimbursement.").

On appeal, Teresa contends "[t]he Court did not give due consideration to the length of the marriage, the earning capacity of the parties, the feasibility of [ ] becoming self-supporting at a standard of living comparable to that she enjoyed during the marriage, and the distribution of property." *See* Iowa Code § 598.21A(a), (c), (e), (f) (2018) (four of several factors for consideration in the spousal support analysis). On our de novo review, we agree.

As the district court acknowledged, the marriage crossed the durational threshold, requiring strong consideration of traditional spousal support. *See Gust*, 858 N.W.2d at 410–11 (stating "duration of the marriage is an important factor for an award of traditional spousal support" and "[g]enerally speaking, marriages lasting twenty or more years commonly cross the durational threshold, and merit serious consideration for traditional spousal support"). David's earning capacity also militated in favor of a spousal support award. *See id.* at 411 (providing that after considering the duration of the marriage, a court should consider "need and ability"; "In determining need, we focus on the earning capability of the spouses, not necessarily on actual income."). David was part owner, general manager, and certified motorcycle mechanic in his family's business, Central Cylinder Service, Inc. (CCS). He earned $86,103.82 a year and accepted part-time side jobs that enhanced his earnings. He testified he "burned [his] body up" by working long hours and shoulder surgery and progressing osteoarthritis prevented him from continuing those part-time jobs. But there was no indication the deterioration in his health placed his regular employment at risk. As the district court stated in connection with the child support calculation, "David's income has steadily increased to the level it is today, and shows no decrease." At forty-nine, David was capable of earning more than double the amount Teresa had only begun earning.

Teresa also was forty-nine years old. She earned no wages for approximately two years of the marriage and, in all but two of the remaining years, held only part-time jobs with annual earnings of less than $20,000. Toward the end of the marriage, she returned to college to obtain a teaching degree. She

began a job as a special education teacher around the time David filed the dissolution petition. Her salary was $34,895.42 per year, and she received $1000 per year as a cheer coach. Her total income was a fraction of David's, and given her late entry into the teaching field, she had fewer years to increase her earnings. The disparate earning capacities warranted an award of traditional spousal support.

We reach this conclusion notwithstanding David's contention—adopted by the district court—that Teresa's spending habits during the marriage justified the denial of spousal support. Before the marriage, a trusted individual predicted financial management might be a problem for the couple. Three years into the marriage, David recognized the accuracy of the prediction, but he did little to alter the couple's financial trajectory. While he took over the payment of bills from Teresa, he overlooked imprudent withdrawals from the couple's joint bank account and acquiesced in or initiated some of the withdrawals. As Teresa testified, "[h]e had access to the account like I did." Teresa's overspending was not grounds for denial of traditional spousal support, given the length of the marriage and the significant difference in earning capacities. And, even if the standard of living Teresa enjoyed during the marriage did not align with the couple's earnings, she was slated to take on several debts that David assumed while the case was pending. They included the home mortgage of $1033 per month, her monthly car insurance payment of $157, and her monthly college bill of $150.

We are left with the property distribution. *See id.* at 411 ("Following a marriage of long duration, we have affirmed awards both of alimony and substantially equal property distribution, especially where the disparity in earning

capacity has been great."). The district court awarded Teresa the family home. The court ordered her to make an equalizing payment of $28,822.60.[1] Teresa contends "the court's distribution of property weighs in favor of a spousal support award for two major reasons"—(1) "under the court's distribution of debts, [she] will be saddled with significant debt," and (2) "David was awarded his interest in CCS."

We begin with the second issue—the award of David's interest in CCS. The couple stipulated the stock was a gift from David's parents to David; the shares would be "awarded to David free and clear of any interest in Teresa"; and, in consideration, Teresa would receive $30,000 as a compromise settlement. The stipulation further stated, "[N]o valuation of [CSS's] business, assets, and/or stock [would] be conducted, and no further discovery [would] be had regarding valuation of said business, assets, and/or stock." The stipulation continued, "[a]ll matters concerning the bifurcated portion of this matter, namely: . . . whether [David's] interest in the corporate stock is his separate property, or marital in nature, and . . . whether it would be unjust not to include same in the marital estate matters are resolved." Because Teresa was separately compensated for the CCS stock, we conclude the disposition of that stock was not a factor in the spousal support determination.

As for Teresa's debt load, the decree left her with premarital student debt of $15,055, which the court concluded would "not be considered marital debt." The

---

[1] The court deducted a "$16,000 gift" from the "net total" but also deducted that amount from the home's value in awarding the home to Teresa and deducted that amount from the total net assets prior to dividing the assets by fifty percent to arrive at each party's share. If the duplicate "gift credits" were eliminated, Teresa would owe David $36,822.60 rather than $28,822.60. As discussed below, other modifications reduce the equalizing payment.

district court also concluded student loans of $24,250 taken out during the marriage would "not be considered marital debt." Finally, the court concluded certain debts incurred after the parties' separation would "not be considered marital debt." We will discuss these debts in greater detail below. On our de novo review, we agree the large debt load supported an award of spousal support. We modify the dissolution decree to award Teresa $1500 per month in traditional spousal support until she turns sixty-five, either party dies, or she remarries. *Cf. Gust*, 858 N.W.2d at 412 (stating, "[w]ith respect to duration, we have observed that an award of traditional spousal support is normally payable until the death of either party, the payee's remarriage, or until the dependent is capable of self-support at the lifestyle to which the party was accustomed during the marriage" and affirming traditional spousal support where there was no reason to believe spouse would "ever be able to generate enough income to support herself at the standard of living she enjoyed during the marriage.").

## II.     *Property Division*

Teresa raises the following issues with respect to the property division: (A) "the court did not assign a value to David's interest in the CCS stock, even if such was not going to be divided"; (B) "the court awarded assets of the parties to third-parties, i.e. the parties' children, not the parties themselves"; (C) "the court concluded that certain debts of the parties; i.e., [her] student loans and post-separation credit card debt, were non-marital and not subject to division, and so decided without a finding of waste"; (D) "the court allocated to [her] an asset that no longer existed; i.e., the 2018 tax refund, and assigned a debt to David that had already been paid; i.e., the 2018 tax liability"; (E) "the court failed to do equity in

allocating David's credit card debt to [her]"; and (F) the court failed to do equity in allocating certain assets. Ultimately, what constitutes an equitable distribution depends upon the circumstances of each case. *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007).

*(A)    CCS Stock*

Notwithstanding the stipulation summarized above, Teresa now challenges the district court's failure to "assign a value to David's interest in the CCS stock, even if such was not going to be divided." Suffice it to say the stipulation took the issue off the table.

*(B)    Assets to the Parties' Children*

Teresa challenges the district court's decision to set aside certain vehicles to the children without assigning the vehicles' values to David. The total value of the vehicles was $4901. Teresa testified the children's vehicles were "still titled in David's name." David did not appear to dispute that testimony. Accordingly, the value of the vehicles should have been assigned to David. We modify the decree to place $4901 on his side of the ledger.

*(C)    Teresa's Student Loans and Post-Separation Debt*

As noted, the district court declined to consider Teresa's premarital student loans of $15,055 as "marital debt." Instead, the court set aside the entire amount to Teresa. On appeal, Teresa contends "the court erred by simply setting aside [her] premarital student loans to [her] rather than considering the premarital nature of the debt as a *factor* in the entire scheme." We agree.

"All property of the marriage that exists at the time of the divorce, other than gifts and inheritances to one spouse, is divisible property." *In re Marriage of*

*Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). "All property, except inherited or gifted property, is included, and the circumstances and underlying nature of the included property are generally considered as factors that impact the second task of determining an equitable division, along with all other relevant factors." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005) (citing Iowa Code § 598.21(1)(a)–(m) (2003)). "Importantly, the property included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." *Sullins*, 715 N.W.2d at 247. "Debts of the parties normally become debts of the marriage, for which either party may be required to assume the responsibility to pay." *Id.* at 251. We conclude the debts should have been included on the balance sheet of divisible property.

That said, the district court provided sound reasons for allocating the debt to Teresa. The court stated:

> Before she married David, Teresa attended classes at [the University of Nebraska Omaha (UNO)]. She testified that because she failed to obtain her degree from UNO, she was required to repay the amount of certain grants that she received, something she didn't realize at the time. Teresa testified that she quit UNO when she and David got engaged. There was no evidence showing that Teresa's UNO debt provided for the family in any manner. David testified at trial that he didn't know that Teresa owed student loans until they were already married at trying to finance their home, which the court finds credible considering Teresa's lack of understanding herself of her student loans . . . . [T]he court finds that it would be inequitable to require David to be responsible for Teresa's premarital student loan debt.

Teresa was asked whether those loans "should be [her] sole and separate student loans . . . and [she] should pay them." She responded, "Sure." We modify the decree to include the $15,055 debt on the joint statement of assets and liabilities.

We turn to Teresa's student loans incurred during the marriage. The district court declined to consider the balance of $24,250 as marital debt, reasoning, "Whatever benefits the family received from Teresa's most recent loans are offset by the amounts paid on Teresa's student loans by the couple's joint funds during the marriage." We believe the balance should have been included in the debts subject to division. Once included, we have no quarrel with the district court's assignment of the remaining outstanding debt to Teresa, minus the amount paid by David on a credit card. In light of our modification of the dissolution decree to award Teresa traditional spousal support, we decline Teresa's request to have David pay a portion of the marital student loan debt. We modify the dissolution decree to include $24,250 on the net worth statement.

Teresa challenges the district court's allocation of two credit card debts of $304 and $196 as non-marital debt. She obtained the credit cards following the couple's separation and does not dispute that the debts should have been allocated to her. The district court declined to consider them "marital debt" and concluded they did not affect the "property settlement calculation." In light of *Sullins* and *Schriner*, we disagree. We modify the dissolution decree to include the two debts in the net worth statement.

*(D) 2018 Tax Return*

Teresa next takes issue with the district court's treatment of the 2018 tax return. David asked Teresa to file a joint tax return; Teresa refused. Teresa received a $7782 refund on her tax return, and David had to pay $11,866. David argued he should receive a credit for the amount he paid, and Teresa's side of the ledger should account for her "windfall." The district court deducted the sum David

paid from his side of the ledger and added the refund amount Teresa received to her side of the ledger.

On appeal, Teresa asserts the district court "erred both in determining that the refund was an asset of the parties and that the liability was a debt." We disagree. David testified he "was advised" it was "best" to file a joint 2018 return and Teresa's refusal "create[d] more of a tax burden for" him. In light of that testimony and the couple's lengthy marriage, we conclude the district court acted equitably in including the 2018 tax refund in the property subject to division.

*(E)    David's Credit Card*

Teresa next takes issue with the district court's treatment of David's credit card debt of $1513.68. She agrees the debt was "marital" but "disagrees that it was equitable for the court to divide [it]."

It does not appear the court divided the debt. In its order on a motion for enlarged findings and conclusions, the district court stated, "Because David was ordered to pay this debt as part of the temporary order . . . he shall remain solely responsible for paying the debt." We conclude the district court appropriately allocated the debt to David.

*(F)    Division of Other Assets*

The district court awarded Teresa a portable building valued at $5000, a log splitter valued at $900, and a mantis tiller, valued at $150. Teresa argues that, by failing to award these items to David, the district court "missed a couple of opportunities to avoid, or at least minimize, an equalization payment." David testified that, although he might have wanted the items, they appropriately went

with the home awarded to Teresa. We conclude the district court's allocation of those assets to Teresa was equitable.

Teresa also challenges the district court's valuation of household goods at $12,000. The district court pointed out that Teresa did not provide evidence to counter that value. We agree. The district court appropriately adopted David's valuation figure for the household goods.

Finally, Teresa challenges the district court's decision to award David a 1964 MG Roadster "because it was a gift from David to [her] and [she] did not agree David should be awarded this asset if the court were to value if at $2200." David valued this vehicle at $3500; Teresa valued it at $2200. The court valued the Roadster at $2000 and awarded it to David. Teresa testified David could have the vehicle if it was valued at $3500. Because the court adopted a lower value and David conceded in his financial statement that the vehicle should be assigned to Teresa, we modify the dissolution decree to grant Teresa the vehicle.

## III. Exclusion of Evidence

Teresa argues the court abused its discretion in refusing to admit text messages between the couple on financial matters. She specifically challenges David's failure to "place a value on his CCS Stock." As discussed, that issue was a non-issue. The court thoroughly explained its rationale for excluding the exhibit. We discern no abuse of discretion in the court's ruling. *See In re Marriage of Heiar*, 954 N.W.2d 464, 469 (Iowa Ct. App. 2020) (setting forth standard of review).

## IV. Trial Attorney Fees

The district court declined Teresa's request to have David pay her trial attorney fees and ordered each party to bear their own fees. Teresa contends the

district court abused its discretion in denying her request, given David's greater ability to pay, her need to file motions to compel discovery, and David's noncooperation on several fronts. Suffice it to say that we discern no abuse of discretion in the court's ruling. *See In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa 1989).

## V. Appellate Attorney Fees

Both parties seek an award of appellate attorney fees. An award rests in our discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Teresa prevailed on more than one key issue. But we conclude the spousal support award will afford her the means to pay her own attorney fees. As for David, we conclude his earnings will allow him to bear his own attorney fees. We deny both parties' requests.

## VI. Disposition

We modify the dissolution decree to award Teresa $1500 per month in traditional spousal support until she turns sixty-five, either party dies, or she remarries. We modify the property provisions of the dissolution decree to (1) include the value of the vehicles assigned to the children ($4901) on David's side of the ledger; (2) award the MG Roadster, valued by the court at $2000 to Teresa, (3) include the values of Teresa's student loans ($15,055 and $24,250) on Teresa's side of the ledger; and (4) include Teresa's credit card debts ($304, $196) on her side of the ledger. We further modify the decree to eliminate the duplicate counting of the $16,000 gift credit in favor of David. These modifications to the district court's net valuation statement attached to its order on the motion to enlarge result in a reduction in the equalizing payment Teresa is obligated to make.

We modify the decree to provide that Teresa shall make an equalizing payment of $16,469.60 rather than $28,822.60 to David.

**AFFIRMED AS MODIFIED.**