**IN THE COURT OF APPEALS OF IOWA**

No. 25-0090
Filed December 17, 2025


**IN RE THE MARRIAGE OF POPPY MICHELLE GROVE
AND ANDREW SCOTT GROVE**

**Upon the Petition of
POPPY MICHELLE GROVE,**
        Petitioner-Appellee,

**And Concerning
ANDREW SCOTT GROVE,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Pottawattamie County, Amy
Zacharias, Judge.


        Andrew Grove appeals the district court's decree allocating marital assets
and debts, arguing the allocation is inequitable. **AFFIRMED.**


        Krisanne C. Weimer of Weimer, Law, P.C., Council Bluffs, for appellant.

        Drew H. Kouris, Council Bluffs, for appellee.


        Considered without oral argument by Ahlers, P.J., and Chicchelly and
Sandy, JJ.

**SANDY, Judge.**

Andrew Grove appeals the district court's allocation of marital assets and debts in its decree dissolving the marriage with his former wife, Poppy Grove. He argues the district court inequitably distributed the marital debts of the parties and requests appellate attorney fees. Poppy likewise requests appellate attorney fees.

After a de novo review, we believe the district court's allocation of marital debts does equity for the parties.

## I. Background Facts and Proceedings.

Poppy and Andrew married in May 2014, and the parties had no children together. Poppy testified that she brought very little property into the marriage. When the parties married, Andrew owned a business called WaterHeaterMan, Inc. The parties started two businesses together during the marriage: Grove Custom Home Builders, LLC ("Grove Custom") and Grove Ventures, LLC ("Grove Ventures"). The district court found that "Grove Custom had income in 2022 of $7,914 and Grove Ventures had income in 2022 of $22,140." Both parties worked to try to make the businesses successful throughout the marriage. The parties also contested the custody of their dog, Midas, but the issue is not on appeal.

In its dissolution decree, the district court assigned various marital assets and debts to the parties. Andrew received a majority of the marital assets, including what remains of the businesses (and the businesses' assets) the parties formed during the marriage. Andrew is the sole shareholder of these businesses. The district court also assigned Andrew a majority of marital debt, which includes the debts associated with those businesses. The district court assigned

$208,173.5 of the marital debt to Andrew and assigned $54,749.5 of the marital debt to Poppy.

Both parties filed motions to reconsider, arguing the district court misallocated marital assets and debts. In its order regarding the parties' motions to reconsider, the district court adjusted the value of the marital home to $565,000 and ordered its sale, splitting the proceeds between the parties 50/50.[1] The district court also transferred the bank account containing $10,432.91 to Andrew.

After these adjustments, Poppy was awarded approximately $14,000 more of the marital net worth than Andrew. Andrew appeals the property division, arguing he is entitled to an equalization payment of $7,935.05 (how Andrew calculated this figure is not clear) to equalize the marital net worth each party receives.

## II. Standard of Review.

"We review cases tried in equity, such as dissolution proceedings, de novo." *In re Marriage of Hansen*, 886 N.W.2d 868, 871 (Iowa Ct. App. 2016). "Although we give weight to the factual determinations of the district court, their findings are not binding upon us." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012). We will only disturb the district court's ruling when it fails to do equity. *Hansen*, 886 N.W.2d at 871.

---

[1] This was agreed to by the parties.

## III. Analysis.

### A. Marital Assets and Debts

Andrew argues the trial court failed to equitably allocate the parties' marital debts. Iowa Code section 598.21(5) (2024) states:

> The court shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties after considering the following:
> a. The length of the marriage
> b. The property brought to the marriage by each party.
> c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
> d. The age and physical and emotional health of the parties.
> e. The contribution by one party to the education, training, or increased earning power of the other.
> f. The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.
> g. The desirability of awarding the family home or the right to live in the family home for a reasonable period to the party having custody of the children, or if the parties have joint legal custody, to the party having physical care of the children.
> h. The amount and duration of an order granting support payments to either party pursuant to section 598.21A and whether the property division should be in lieu of such payments.
> i. Other economic circumstances of each party, including pension benefits, vested or unvested. Future investments may be considered, but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered.
> j. The tax consequences to each party.
> k. Any written agreement made by the parties concerning property distribution
> l. The provisions of the antenuptial agreement.
> m. Other factors the court may determine to be relevant in an individual case.

"The allocation of marital debts inheres in the property division." *In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006) (citation omitted). An equitable distribution of marital assets and debts does not necessarily mean an equal division. *In re Marriage of Schriner*, 695 N.W.2d 493, 499 (Iowa 2005). We are to reverse only if the district court has failed to do equity. *Hansen*, 886 N.W.2d at 871.

Andrew argues the district court failed to state any reasons under section 598.21 for the unequal division of marital net worths, which resulted in Poppy receiving approximately $14,000 more than Andrew. We disagree. In our view, the district court's order does equity for the parties.

Andrew received more of the marital assets than Poppy but also received most of the marital debts. True enough, the district court saddled Andrew with the debts associated with the companies formed during the marriage. However, Andrew retains ownership of WaterHeaterMan, Inc. and Grove Custom, as well as their assets, and is the sole shareholder of the companies.[2] Further, Poppy testified that she worked for Grove Custom for many years during the marriage without earning a salary.

The district court found that Poppy had a job at the time of trial making approximately $70,000 annually,[3] and that she made an additional $22,000 as a licensed realtor in 2024. The district court also found that Andrew works at FTM Plumbing making approximately $104,000 a year, meaning Andrew's income was

---

[2] The district court did not make a finding on the value of these companies due to a lack of information in the record.

[3] Poppy testified at trial that she refused to state where she worked because she is afraid Andrew would attempt to contact her at work.

greater than Poppy's by approximately $12,000 in 2024. The district court also found that, because of the tumultuous nature of the marriage, Poppy now attends weekly therapy.[4]

Ultimately, we do not think the district court's order failed to do equity. Indeed, there is a disparity in the district court's award to Andrew and Poppy. However, the district court's award was equitable when considering the difference in the parties' earning capacity (including the future potential income from Andrew's sole retention of the businesses) and the total amount of assets and debts allocated to the parties. Given these considerations under section 598.21(5), we think the approximately $14,000 disparity in the division of marital net worth between the parties was equitable.

### B. Appellate Attorney Fees

Both parties request appellate attorney fees. Appellate attorney fees are awarded upon our discretion and "are not a matter of right." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). When considering whether to award appellate attorney fees, we are to consider "the needs of the part[ies] seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id*. (citation omitted).

We conclude that neither party is entitled to appellate attorney fees. Andrew's appeal was unsuccessful on the merits, and although the district court's award was equitable, Poppy was awarded approximately $14,000 more of the

---

[4] The spousal support awarded to Poppy (which is not at issue in this appeal) is meant to cover these expenses. We simply note this fact in reference to section 598.21(5)(d) regarding the emotional health of the parties.

marital net worth than Andrew.  Therefore, we decline to award either party their requested appellate attorney fees.

## IV. Conclusion.

After a de novo review, we decline to award Andrew his requested equalization payment of $7,935.05 as the district court's division of marital debts was equitable.  We likewise decline to award either party appellate attorney fees.

**AFFIRMED.**